[952 NE2d 463, 928 NYS2d 647]

ABN AMRO Bank, N.V., et al., Appellants, et al., Plaintiffs, v MBIA Inc. et al., Respondents.

Argued May 31, 2011; decided June 28, 2011

210

## POINTS OF COUNSEL

*Sullivan & Cromwell LLP*, New York City (*Robert J. Giuffra, Jr., Michael T. Tomaino, Jr., Brian T. Frawley, Julia M. Jordan, William H. Wagener* and *Jonathan C. Shapiro* of counsel), *Skadden, Arps, Slate, Meagher & Flom LLP* (*Jay B. Kasner, Scott D. Musoff* and *George A. Zimmerman* of counsel), *Mayer Brown LLP* (*Jean-Marie L. Atamian* of counsel), *Schulte Roth & Zabel LLP* (*Alan R. Glickman* of counsel), *Hughes Hubbard & Reed LLP* (*Michael Luskin* and *Robb W. Patryk* of counsel), and *Bracewell & Giuliani LLP* (*Rachel B. Goldman* of counsel), for appellants. I. The Appellate Division majority erred in holding that the Superintendent of Insurance's private letter approvals, issued without notice and a hearing, bar plaintiffs' Debtor and Creditor Law and common-law claims. (*Capital Tel. Co. v Pattersonville Tel. Co.*, 56 NY2d 11; *Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d 1; *Matter of Van Wie v Kirk*, 244 AD2d 13; *Friedman v State of New York*, 24 NY2d 528; *Burden v Graves*, 23 AD3d 421; *David v Biondo*, 92 NY2d 318; *McGettigan v New York Cent. R.R. Co.*, 268 NY 66; *Levine v Tolchin*, 239 AD2d 279; *Fiala v Metropolitan Life Ins. Co.*, 6 AD3d 320; *In re MetLife Demutualization Litig.*, 689 F Supp 2d 297.) II. Under settled law, the Appellate Division majority erred in holding that plaintiffs must bring their challenge to MBIA's fraudulent "transformation" exclusively in a CPLR article 78 proceeding. (*Koerner v State of N.Y., Pilgrim Psychiatric Ctr.*, 62 NY2d 442; *May v State of New York*, 86 AD2d 898; *Capital Tel. Co. v Pattersonville Tel. Co.*, 56 NY2d 11; *Richards v Kaskel*, 32 NY2d 524; *Dacus v Spin-Nes Realty & Constr. Co.*, 22 NY2d 427; *Greyhound Leasing & Fin. Corp. v Joiner City Unit*, 444 F2d 439; *Matter of City of New York [Grand Lafayette Props. LLC]*, 6 NY3d 540; *Sohn v Calderon*, 78 NY2d 755; *Matter of Lewis Tree Serv. v Fire Dept. of City of N.Y.*, 66 NY2d 667; *Travelers Indem. Co. v State of New York*, 33 AD2d 127, 28 NY2d 561.) III. In any event, this Court should reverse, because the Appellate Division majority impermissibly considered—and found—disputed "facts" outside the "four corners" of the complaint. (*Travelers Indem. Co. v State of New York*, 33 AD2d 127; *People v Coventry First LLC*, 13 NY3d 108; *Capital Tel. Co. v Pattersonville Tel.*

Co., 56 NY2d 11; *Tango v Tulevech*, 61 NY2d 34; *United States Gypsum Co. v Indiana Gas Co., Inc.*, 350 F3d 623; *Matter of Charles H. Greenthal & Co. v Lefkowitz*, 32 NY2d 457; *Leon v Martinez*, 84 NY2d 83; *Walker v City of New York*, 46 AD3d 278; *Matter of Granwell*, 20 NY2d 91; *Securities & Exch. Commn. v First Jersey Sec., Inc.*, 101 F3d 1450.) IV. The Appellate Division majority erred in dismissing plaintiffs' well-pleaded claim for breach of the implied covenant of good faith and fair dealing. (*Dalton v Educational Testing Serv.*, 87 NY2d 384; *New York Univ. v Continental Ins. Co.*, 87 NY2d 308; *Bank of China v Chan*, 937 F2d 780; *Gross v Empire Healthchoice Assur., Inc.*, 16 Misc 3d 1112[A], 2007 NY Slip Op 51390[U]; *Chase Manhattan Bank, N.A. v Keystone Distribs., Inc.*, 873 F Supp 808; *EBC I, Inc. v Goldman Sachs & Co.*, 7 AD3d 418; *Randall-Smith v 43rd St. Estates Corp.*, 17 NY2d 99.) V. The Appellate Division majority erred in dismissing plaintiffs' well-pleaded veil-piercing claim. (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135; *First Bank of Ams. v Motor Car Funding*, 257 AD2d 287; *Serio v Ardra Ins. Co.*, 304 AD2d 362; *Grad v Roberts*, 14 NY2d 70; *Matter of EAC of N.Y., Inc. v Capri 400, Inc.*, 49 AD3d 1006; *Rebh v Rotterdam Ventures*, 252 AD2d 609; *Chase Manhattan Bank [N.A.] v 264 Water St. Assoc.*, 174 AD2d 504; *Prodell v State of New York*, 211 AD2d 966; *Associated Indem. Corp. v Fairchild Indus., Inc.*, 961 F2d 32; *Klostermann v Cuomo*, 61 NY2d 525.)

*Kasowitz, Benson, Torres & Friedman, LLP*, New York City (*Marc E. Kasowitz, Daniel R. Benson, Albert S. Mishaan, Kenneth R. David, Seth A. Moskowitz* and *Sarmad M. Khojasteh* of counsel), for respondents. I. The Appellate Division correctly dismissed the complaint as an impermissible collateral attack on the New York State Insurance Department's decision. (*Matter of City of New York [Grand Lafayette Props. LLC]*, 6 NY3d 540; *Matter of Foy v Schechter*, 1 NY2d 604; *Buffalo & State Line R.R. Co. v Supervisors of Erie County*, 48 NY 93; *United States Trust Co. of N.Y. v Mayor of City of N.Y.*, 144 NY 488; *City of New York v Aetna Cas. & Sur. Co.*, 264 AD2d 304; *Eslick v Blue Cross of W. N.Y.*, 159 AD2d 940; *Matter of Lewis Tree Serv. v Fire Dept. of City of N.Y.*, 66 NY2d 667; *Matter of Corrigan v Joseph*, 304 NY 172; *Fiala v Metropolitan Life Ins. Co.*, 6 AD3d 320; *Steen v Quaker State Corp.*, 12 AD3d 989.) II. The plaintiff banks cannot refute that the Appellate Division correctly dismissed their plenary action as an impermissible collateral attack. (*Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d 1; *Matter of R.W. Granger & Sons v Comptroller of*

*State of N.Y.*, 220 AD2d 945; *Matter of Hertz v Rozzi*, 148 AD2d 535; *People ex rel. Platt v Wemple*, 117 NY 136, 140 US 694; *Travelers Indem. Co. v Orange & Rockland Utils., Inc.*, 73 AD3d 576; *Capital Tel. Co. v Pattersonville Tel. Co.*, 56 NY2d 11; *Fransen v Conoco, Inc.*, 64 F3d 1481, 516 US 1166; *Matter of Van Wie v Kirk*, 244 AD2d 13; *Friedman v State of New York*, 24 NY2d 528; *Burden v Graves*, 23 AD3d 421.) III. The Appellate Division properly dismissed the plaintiff banks' claims as a matter of law. (*Matter of Feiner v New York State Off. of Real Prop. Servs.*, 25 AD3d 1005; *Kadison v Long Is. Sav. Bank*, 225 AD2d 523; *C & N Camera & Elecs. v Farmore Realty*, 178 AD2d 310; *Fiala v Metropolitan Life Ins. Co.*, 6 AD3d 320; *Steen v Quaker State Corp.*, 12 AD3d 989; *Brawer v Johnson*, 231 AD2d 664; *Matter of East N.Y. Sav. Bank Depositors Litig.*, 145 Misc 2d 620; *Craft v Florida Fed. Sav. & Loan Assn.*, 786 F2d 1546; *Harr v Prudential Fed. Sav. & Loan Assn.*, 557 F2d 751; *Wright v Prudential Ins. Co. of Am.*, 285 F Supp 2d 515.) IV. The dismissal of the plaintiff banks' plenary claims is in no way unconstitutional. (*Board of Regents of State Colleges v Roth*, 408 US 564; *Duke Power Co. v Carolina Environmental Study Group, Inc.*, 438 US 59; *Lovell v One Bancorp*, 818 F Supp 412; *Baraka v McGreevey*, 481 F3d 187, 552 US 1021; *Gibbes v Zimmerman*, 290 US 326; *Crane v Hahlo*, 258 US 142; *Martz v Incorporated Vil. of Val. Stream*, 22 F3d 26; *Walentas v Lipper*, 862 F2d 414; *S & D Maintenance Co., Inc. v Goldin*, 844 F2d 962; *Ganci v New York City Tr. Auth.*, 420 F Supp 2d 190.) V. The Appellate Division correctly dismissed the plaintiff banks' claims for failure to state a cause of action. (*Lamphear v State of New York*, 91 AD2d 791; *Rowe v Great Atl. & Pac. Tea Co.*, 46 NY2d 62; *Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470; *D & L Holdings v Goldman Co.*, 287 AD2d 65; *NPS, LLC v Ambac Assur. Corp.*, 706 F Supp 2d 162; *Water Works Bd. of City of Birmingham v Ambac Fin. Group, Inc.*, 718 F Supp 2d 1317; *Allapattah Servs., Inc. v Exxon Corp.*, 61 F Supp 2d 1300, 333 F3d 1248; *National Union Fire Ins. Co. of Pittsburgh, Pa. v Xerox Corp.*, 25 AD3d 309; *Bank of China v Chan*, 937 F2d 780.) VI. The plaintiff banks' request for leave to replead their complaint should be denied. (*Bingham v New York City Tr. Auth.*, 99 NY2d 355; *Prichard v 164 Ludlow Corp.*, 49 AD3d 408; *Minihane v Weissman*, 226 AD2d 152; *Matter of Grimm v State of N.Y. Div. of Hous. & Community Renewal Off. of Rent Admin.*, 15 NY3d 358.)

*Eric T. Schneiderman, Attorney General*, New York City (*Steven C. Wu, Barbara D. Underwood* and *Richard Dearing* of

counsel), for Superintendent of Insurance, amicus curiae. I. The Superintendent of Insurance's approval of insurer transactions may not be collaterally attacked in a plenary fraudulent conveyance action. (*Matter of Guardian Life Ins. Co. of Am. v Bohlinger*, 308 NY 174; *Matter of City of New York [Grand Lafayette Props. LLC]*, 6 NY3d 540; *Connors v Amax Coal Co., Inc.*, 858 F2d 1226; *Flacke v Onondaga Landfill Sys.*, 69 NY2d 355; *Breen v Cunard Lines S. S. Co.*, 33 NY2d 508; *Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.*, 66 NY2d 444; *Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d 395; *Milwaukee v Illinois*, 451 US 304; *Matter of Knickerbocker Agency [Holz]*, 4 NY2d 245; *Matter of Lawyers Tit. & Guar. Co.*, 254 App Div 491.) II. The plaintiff banks' arguments are meritless. (*Fransen v Conoco, Inc.*, 64 F3d 1481; *Abiele Contr. v New York City School Constr. Auth.*, 91 NY2d 1; *Whitney Nat. Bank in Jefferson Parish v Bank of New Orleans & Trust Co.*, 379 US 411; *Matter of Evans v Monaghan*, 306 NY 312; *Matter of Venes v Community School Bd. of Dist. 26*, 43 NY2d 520; *Capital Tel. Co. v Pattersonville Tel. Co.*, 56 NY2d 11; *People v Grasso*, 11 NY3d 64; *Milwaukee v Illinois*, 451 US 304; *Richards v Kaskel*, 32 NY2d 524; *Matter of Charles H. Greenthal & Co. v Lefkowitz*, 32 NY2d 457.)

*New York Civil Liberties Union Foundation*, New York City (*Andrew L. Kalloch* and *Taylor Pendergrass* of counsel), for New York Civil Liberties Union and others, amici curiae. I. It is a violation of due process to preclude a litigant from asserting claims on the basis of a prior proceeding to which the litigant was not a party. (*Hansberry v Lee*, 311 US 32; *Pennoyer v Neff*, 95 US 714; *Gramatan Home Invs. Corp. v Lopez*, 46 NY2d 481; *Whitley v Klauber*, 51 NY2d 555; *Parklane Hosiery Co. v Shore*, 439 US 322; *Matter of People v Applied Card Sys., Inc.*, 11 NY3d 105; *Bigelow v Old Dominion Copper Mining & Smelting Co.*, 225 US 111; *Hannah v Larche*, 363 US 420; *Ohio Bell Telephone Co. v Public Util. Comm'n of Ohio*, 301 US 292; *Morgan v United States*, 304 US 1.) II. The Insurance Department's decision cannot preclude the assertion of common-law rights and causes of action, which must be preserved in the absence of explicit derogation by the Legislature. (*Jamison v Encarnacion*, 281 US 635; *Isbrandtsen Co. v Johnson*, 343 US 779; *Kirke La Shelle Co. v Armstrong Co.*, 263 NY 79; *United States v Rodgers*, 461 US 677; *Imbler v Pachtman*, 424 US 409; *United States v Sanges*, 144 US 310; *Commodity Futures Trading Comm'n v Schor*, 478 US 833; *Briscoe v LaHue*, 460 US 325; *Nixon v Fitzgerald*, 457 US 731; *Scheuer v Rhodes*, 416 US 232.)

*Patrick J. Borchers*, Omaha, Nebraska, pro se and *Arthur R. Miller*, New York City, pro se, amici curiae. I. The Superintendent of Insurance's determination was not entitled to preclusive effect. (*Allied Chem. v Niagara Mohawk Power Corp.*, 72 NY2d 271; *United States v Utah Constr. & Mining Co.*, 384 US 394; *Matter of Josey v Goord*, 9 NY3d 386.) II. No issue fatal to the plaintiffs' fraudulent conveyance causes of action was conclusively decided. (*Capital Tel. Co. v Pattersonville Tel. Co.*, 56 NY2d 11.) III. Plaintiffs were strangers to the Superintendent of Insurance's determination and thus cannot be adversely bound. (*B. R. DeWitt, Inc. v Hall*, 19 NY2d 141; *Capital Tel. Co. v Pattersonville Tel. Co.*, 56 NY2d 11; *Estate of Schneider v Finmann*, 15 NY3d 306; *Phillips Petroleum Co. v Shutts*, 472 US 797; *Martin v Wilks*, 490 US 755; *Taylor v Sturgell*, 553 US 880; *Richards v Jefferson County*, 517 US 793; *Amchem Products, Inc. v Windsor*, 521 US 591; *Hansberry v Lee*, 311 US 32; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222.)

*Simpson Thacher & Bartlett LLP*, New York City (*David W. Ichel, Barry R. Ostrager, Joseph M. McLaughlin, Patrick T. Shilling* and *Daniel J. Stujenske* of counsel), for Aurelius Capital Master Ltd. and others, amici curiae. I. The MBIA defendants cannot satisfy the elements of collateral estoppel. (*Staatsburg Water Co. v Staatsburg Fire Dist.*, 72 NY2d 147; *Capital Tel. Co. v Pattersonville Tel. Co.*, 56 NY2d 11; *Leon v Martinez*, 84 NY2d 83; *Pattison v Pattison*, 301 NY 65; *Mills v Everest Reins. Co.*, 410 F Supp 2d 243; *Baker v Muraski*, 61 AD3d 1373; *Dalton v Educational Testing Serv.*, 87 NY2d 384; *FCNB Spiegel v Dimmick*, 163 Misc 2d 152; *Bauer v Planning Bd. of Vil. of Scarsdale*, 159 AD2d 532; *J. A. Preston Corp. v Fabrication Enters.*, 68 NY2d 397.) II. Even if there were a "collateral attack doctrine" apart from collateral estoppel, it could not bar plaintiffs' claims. (*Capital Tel. Co. v Pattersonville Tel. Co.*, 56 NY2d 11; *Fiala v Metropolitan Life Ins. Co.*, 6 AD3d 320; *Richards v Kaskel*, 32 NY2d 524; *Belco Petroleum Corp. v AIG Oil Rig*, 164 AD2d 583; *McGee v Lepow*, 82 AD2d 746, 54 NY2d 1027; *Matter of East N.Y. Sav. Bank Depositors Litig.*, 145 Misc 2d 620, *affd sub nom. Wechsler v Murray*, 162 AD2d 251; *Brawer v Johnson*, 231 AD2d 664; *Matter of Empire Blue Cross & Blue Shield Customer Litig.*, 164 Misc 2d 350, *affd sub nom. Minihane v Weissman*, 226 AD2d 152; *Steen v Quaker State Corp.*, 12 AD3d 989; *Academic Health Professionals Ins. Assn. v M.Q. of N.Y., Inc.*, 30 AD3d 165, 7 NY3d 895.) III. Precluding claims on the

basis of private agency determinations would be bad public policy. (*Staatsburg Water Co. v Staatsburg Fire Dist.*, 72 NY2d 147; *David v Biondo*, 92 NY2d 318.)

## OPINION OF THE COURT

CIPARICK, J.

In this dispute between MBIA Insurance Corporation (MBIA Insurance) and certain of its policyholders, the principal question presented is whether the 2009 restructuring of MBIA Insurance and its related subsidiaries and affiliates authorized by the Superintendent of the New York State Insurance Department (the Superintendent) precludes these policyholders from asserting claims against MBIA Insurance under the Debtor and Creditor Law and the common law. We hold that the Superintendent's approval of such restructuring pursuant to his authority under the Insurance Law does not bar the policyholders from bringing these claims.

I.

This appeal has its origins in the unraveling of the world's financial markets that began in 2007. As described in the complaint, plaintiffs are a group of unrelated banking and financial services institutions that hold financial guarantee insurance policies issued by defendant MBIA Insurance on their structured-finance products. In May 2009, they commenced this action against defendants MBIA Insurance, MBIA Inc., and MBIA Insurance Corp. of Illinois (MBIA Illinois) following the Superintendent's February 2009 approval of their application for restructuring. Plaintiffs contend that the restructuring constituted a fraudulent conveyance, which left MBIA Insurance undercapitalized and unable to meet its obligations under the terms of their policies.

Prior to the restructuring, MBIA Inc., a publicly-traded Connecticut-based corporation, provided financial guarantee insurance and other forms of credit protection to its customers worldwide. It conducted this business through its wholly-owned subsidiary, MBIA Insurance, a New York-based corporation. MBIA Illinois, an essentially-dormant, Illinois-domiciled corporation, was a wholly-owned subsidiary of MBIA Insurance.

As a monoline insurer, MBIA Insurance "exclusively wrote financial guarantee insurance policies and did not offer property, casualty, life, disability or other forms of insurance." Under the terms of its policies, MBIA Insurance promised to pay its

policyholders if an obligor on a covered instrument defaulted. Historically, MBIA Insurance had underwritten policies that covered municipal bonds and other types of securities issued by governmental entities. However, in response to market trends, MBIA started offering guarantee insurance related to structured-finance products. Structured-finance products, which include mortgage-backed securities, are "obligations payable from or tied to the performance of pools of assets." Notably, by the end of 2008, MBIA Insurance had a portfolio of policies with a face amount of $786.7 billion. Approximately one third of MBIA Insurance's portfolio consisted of structured-finance policies ($233 billion in face amount); the remaining two thirds consisted of municipal bond policies ($553.7 billion in face amount).

Beginning in 2007 and continuing through 2008, the health of the real estate market deteriorated. In turn, the risks associated with certain financial products tied to real estate, such as structured-finance products, increased concomitantly. Not surprisingly, MBIA Insurance's exposure to liability with respect to its structured-finance policy portfolio grew exponentially as the real estate market crumbled during this period.

In 2008, MBIA Inc. responded to this crisis in a number of ways. On February 25, 2008, it publicly "announc[ed] that it would establish 'separate legal operating entities for MBIA's public, structured, and asset management businesses' within five years." At the same time, MBIA Inc. suspended the issuance of new structured-finance guarantee policies. In May 2008, MBIA Inc. also considered infusing $900 million of its own cash into its subsidiaries "in order to 'support MBIA Insurance['s] triple-A ratings and existing and future policyholders.' " Despite these efforts to curb the negative effects of the downturn in the real estate market, in early June 2008, both Moody's Investors Service, Inc. (Moody's) and Standard & Poor's Rating Services downgraded MBIA Insurance's creditworthiness. MBIA Inc., as a result, opted not to invest its own cash into its subsidiaries, but instead decided to pursue its plan to segregate its municipal bond portfolio from its structured-finance portfolio, which it feared was turning toxic.

Under the Insurance Law, many aspects of this plan required approval or nondisapproval by the Superintendent. To that end, on December 5, 2008, MBIA Insurance, on behalf of itself and the other defendants, submitted an ex parte application to the Superintendent, detailing a series of proposed transactions that

would effectuate their desired goals. MBIA Insurance supplemented and amended its application several times in the ensuing two months. Defendants requested approval of the following transactions in order to separate their two sets of portfolios. First, MBIA Insurance would declare and distribute a $1.147 billion dividend to MBIA Inc. Second, MBIA Insurance would redeem and retire roughly one third of its capital stock from MBIA Inc. and in exchange would give MBIA Inc. approximately $938 million more in cash and securities, as well as all of the issued and outstanding stock of MBIA Illinois. Third, MBIA Inc. would transfer the cash it received from the dividend distribution and the cash, securities and MBIA Illinois stock it received in connection with the stock redemption to MuniCo Holdings Inc. (MuniCo), a wholly-owned subsidiary of MBIA Inc. Fourth, MuniCo would capitalize MBIA Illinois, no longer a subsidiary of MBIA Insurance, by contributing $2.085 billion it received in these asset transfers.

Finally, following the capitalization of MBIA Illinois, MBIA Insurance further proposed that it and MBIA Illinois would enter into a series of transactions pursuant to which MBIA Illinois would "reinsure, on a cut-through basis, those financial guaranty insurance policies sold or reinsured by MBIA [Insurance]." Such an arrangement would allow the municipal bond policyholders to submit claims directly to MBIA Illinois as well as MBIA Insurance. In exchange, MBIA Insurance would remit about $3.66 billion to MBIA Illinois, most of which represented "the net unearned premium reserve . . . associated with" the municipal bond policies.

By letter dated February 17, 2009, the Superintendent granted each of the approvals requested by MBIA Insurance (the Transformation). The approval letter stated that the Transformation was fair to structured-finance policyholders, noting that MBIA Insurance would "continue to pay all valid claims in a timely fashion." No notice or opportunity to be heard was given to the policyholders.

Specifically, the Superintendent approved the proposed dividend payment made by MBIA Insurance to MBIA Inc. under Insurance Law § 4105 (a), which requires a determination that MBIA Insurance would "retain sufficient surplus to support its obligations and writings." Next, the Superintendent approved the proposed stock redemption, concluding under Insurance Law § 1411 (d) that it was "reasonable and equitable." Finally, with respect to the proposed reinsurance transaction, the

Superintendent did not disapprove, concluding that it comported with statutory factors enunciated in Insurance Law §§ 1308, 1505 and 6906. In his letter, the Superintendent stressed a number of times that his approvals and nondisapprovals were based on "the representations contained in the [a]pplication [by MBIA Insurance] and its supporting submissions, and in reliance on the truth of those representations and submissions."

Following the Superintendent's issuance of its approval/nondisapproval letter, defendants consummated the Transformation, which was given retroactive effect to January 1, 2009. The very next day, MBIA Inc. publicly announced that it had succeeded in segregating its municipal bond policy portfolio from its structured-finance policy portfolio by restructuring its principal insurance subsidiary, MBIA Insurance. MBIA Inc.'s chief executive officer emphasized in a letter to shareholders that the Transformation provided the holding company "with much needed clean capacity for new municipal bond business."

On February 18, 2009, the Superintendent issued his own public statement, announcing that he had overseen "a transformation of [MBIA Insurance] that effectively splits that company in two, dividing its assets and liabilities between two highly capitalized insurance companies." Despite the Superintendent's public endorsement of the restructuring, Moody's further downgraded MBIA Insurance's credit rating to B3, six steps below investment grade and three steps above "junk." One of the primary reasons Moody's cited for its downgrade of MBIA Insurance was the "substantial reduction in claims-paying resources relative to the remaining higher-risk exposures in its insured portfolio, given the removal of capital, and the transfer of unearned premium reserves associated with the ceding of its municipal portfolio to MBIA Illinois."

In May 2009, plaintiffs commenced this action in Supreme Court alleging fraudulent conveyances under New York's Debtor and Creditor Law, breach of contract, abuse of the corporate form, and unjust enrichment. "[A]midst an ongoing financial crisis," plaintiffs allege that

> "[i]n an unlawful attempt to escape MBIA Insurance's coverage obligations to [p]laintiffs and other policyholders, [d]efendants executed a series of fraudulent conveyances, in breach of MBIA Insurance's contracts, to transfer MBIA Insurance assets into MBIA Illinois—an entity that [d]efendants

structured to be free from liabilities or other obligations to [p]laintiffs."

Plaintiffs specifically allege that "[d]efendants [fraudulently] stripped approximately $5 billion in cash and securities out of MBIA Insurance" and that MBIA Insurance received no consideration for the assets it transferred. They further allege that the fraudulent conveyances have exposed them to potentially billions of dollars in losses since MBIA Insurance is now woefully undercapitalized and insolvent. Moreover, plaintiffs allege that MBIA Inc. abused the corporate form by causing MBIA Insurance to engage in these unfair transactions in order to shield assets away from plaintiffs. Plaintiffs seek to set aside the allegedly fraudulent transfer or, in the alternative, a declaration that defendants shall be jointly and severally liable to plaintiffs under plaintiffs' insurance policies, or an award of damages.

Defendants moved to dismiss the complaint on June 9, 2009. Their principal basis for dismissal is that plaintiffs' claims in this plenary proceeding are impermissible "collateral attacks" on the Superintendent's approval of the Transformation, which can only be challenged in a CPLR article 78 proceeding. Defendants also contend that the complaint fails to state cognizable causes of action.

On June 15, 2009—six days after defendants moved to dismiss the complaint and within the four-month statute of limitations period—plaintiffs separately filed an article 78 proceeding in Supreme Court, assigned to the same Justice handling the plenary action, challenging the Superintendent's 2009 approval/nondisapproval of the Transformation. Plaintiffs assert in that proceeding that the Superintendent acted arbitrarily and capriciously and abused his discretion. For relief, plaintiffs seek an annulment of the Superintendent's determination and a declaration that the transactions approved by the Superintendent in connection with the Transformation are null and void. The article 78 proceeding remains pending while the parties conduct discovery.

In a written decision, Supreme Court denied defendants' motion seeking dismissal of the complaint (*ABN Amro Bank N.V. v MBIA Inc.*, 26 Misc 3d 1223[A], 2010 NY Slip Op 50238[U] [Sup Ct, NY County 2010]). The court rejected defendants' "collateral attack" argument, noting that plaintiffs were not seeking a determination from the court that the Superintendent incorrectly applied New York's Insurance Law (2010 NY Slip Op

50238[U] at *16). Rather, Supreme Court held, the "mere fact that there was earlier approval of the . . . restructuring by the Insurance Department does not immunize defendants from subsequent statutory and common law claims" (*id.* at *13). In so holding, the court observed that "[t]he Superintendent was not called upon to examine whether defendants intended to defraud policyholders" (*id.* at *15). Supreme Court then evaluated the legal sufficiency of the complaint and found that plaintiffs adequately pleaded causes of action under the Debtor and Creditor Law (*see id.* at *18). It also concluded that plaintiffs adequately stated claims for breach of contract premised on a breach of the implied covenant of good faith and fair dealing, abuse of the corporate form allowing for a declaratory judgment piercing the corporate veil of MBIA Insurance, and unjust enrichment (*see id.* at *18-19).

The Appellate Division, with two Justices dissenting in part, reversed and granted defendants' motion to dismiss the complaint (*ABN AMRO Bank, N.V. v MBIA Inc.*, 81 AD3d 237, 248 [1st Dept 2011]). The majority construed plaintiffs' complaint as a "collateral attack" on the Superintendent's authorization of the Transformation. Citing its decision in *Fiala v Metropolitan Life Ins. Co.* (6 AD3d 320 [1st Dept 2004]), the majority held that "[a] plenary action that seeks the overturn of the Superintendent's determination, or challenges matters that the determination necessarily encompasses, constitutes an impermissible indirect challenge to that determination" (81 AD3d at 246 [internal quotation marks omitted]). As a result, the majority opined that an article 78 proceeding challenging the Superintendent's determination is the only remedy available to the plaintiffs (*see id.* at 246).

The majority also held that, in any event, plaintiffs' three common-law claims failed to state causes of action. Specifically, the majority noted that plaintiffs' breach of contract and piercing of the corporate veil claims should have been dismissed on the ground that plaintiffs fail to allege a default on payments owed to them under their policies (*see id.* at 244-245). The majority found that "[p]laintiffs also fail to allege particularized statements detailing fraud or other corporate misconduct that would warrant piercing the corporate veil" (*id.* at 245). Finally, the majority concluded that plaintiffs failed to state a cause of action for unjust enrichment because they did not allege that "MBIA Insurance has conferred some benefit upon MBIA Inc. and MBIA Illinois at plaintiffs' expense" (*id.* at 246).

The two dissenting Justices agreed with the majority that plaintiffs' unjust enrichment cause of action should have been dismissed, but would have otherwise affirmed the order of Supreme Court (*see id.* at 253 [Abdus-Salaam, J., dissenting in part]). The dissent rejected the notion that an article 78 proceeding is the sole remedy available to plaintiffs here (*see id.* at 252-253). The dissenting Justices reasoned that the Superintendent's decision did not have a preclusive effect on plaintiffs' right to assert claims against defendants because, unlike the plaintiffs in *Fiala* and the other cases cited by the majority, plaintiffs here had no "opportunity to be heard or otherwise provide input regarding the determination" (*id.* at 253).

Furthermore, the dissent concluded that plaintiffs sufficiently pleaded a cause of action for breach of contract, under a theory that defendants breached an implied covenant of good faith, where they allege that defendants "substantially reduc[ed] the likelihood that MBIA Insurance [would] be able to pay its policyholders," thereby "injuring the right of plaintiffs to receive the fruits of the contract" (*id.* at 254 [internal quotation marks and brackets omitted]). Finally, the dissent concluded that plaintiffs sufficiently pleaded their claim for a declaratory judgment and piercing of the corporate veil, observing that plaintiffs allege that MBIA Inc. abused the privilege of doing business in the corporate form by causing MBIA Insurance to make fraudulent conveyances for no value (*see id.* at 254-255).

Plaintiffs appeal as of right pursuant to CPLR 5601 (a) and we now modify.

## II.

██ Defendants have consistently maintained that plaintiffs' plenary claims under the Debtor and Creditor Law and the common law constitute an "impermissible collateral attack" on the Superintendent's approval of the Transformation. To support their position, defendants do not argue that plaintiffs are collaterally estopped from commencing a proceeding in Supreme Court following the Superintendent's determination. Rather, defendants contend on this appeal that the Insurance Law vests the Superintendent with "exclusive original jurisdiction" to adjudicate plaintiffs' claims that may only be challenged through an article 78 proceeding. For the reasons that follow, we reject this argument.

It is fundamental that "Article VI, § 7 of the NY Constitution establishes the Supreme Court as a court of 'general original

jurisdiction in law and equity' " (*Sohn v Calderon*, 78 NY2d 755, 766 [1991], quoting NY Const, art VI, § 7 [a]). "Under this grant of authority, the Supreme Court 'is competent to entertain all causes of action unless its jurisdiction has been specifically proscribed' " (*id.*, quoting *Thrasher v United States Liab. Ins. Co.*, 19 NY2d 159, 166 [1967]). Indeed, "it has never been suggested that every claim or dispute arising under a legislatively created scheme may be brought to the Supreme Court for original adjudication" (*id.*). Thus, "the constitutionally protected jurisdiction of the Supreme Court does not prohibit the Legislature from conferring exclusive original jurisdiction upon an agency in connection with the administration of a statutory regulatory program" (*id.* at 767).

We applied these principles in *Sohn* and held the agency in question there, the Division of Housing and Community Renewal (DHCR), had exclusive original jurisdiction to resolve a dispute concerning a landlord's entitlement to demolish a rent-regulated building (*see id.* at 767-768). In analyzing the statute governing DHCR's authority, Administrative Code of the City of New York § 26-408, we observed that it was "beyond question that the Legislature intended" such disputes "to be adjudicated by the DHCR" (*id.* at 765-766). Thus, we concluded that the statutory scheme proscribed the landlord in that case from circumventing DHCR's authority and commencing an action in Supreme Court seeking a declaration that was within DHCR's exclusive purview (*see id.* at 767-768). We noted that the landlord, of course, could later challenge a determination made by DHCR by way of an article 78 proceeding (*see id.* at 767).

On the other hand, in *Richards v Kaskel* (32 NY2d 524 [1973]), we held that section 352-e of the General Business Law, which vests the Attorney General with exclusive jurisdiction to approve a cooperative building conversion plan, did not preclude the plaintiffs, tenants of a rent-stabilized apartment complex, from commencing a private lawsuit alleging that their landlord engaged in fraudulent misconduct in connection with such a plan (*see id.* at 535). There, we observed that section 352-e authorized the Attorney General "to consider the sufficiency of the language and content of the [cooperative conversion] plan [and to determine] that the plan . . . complied with the disclosure requirements of the statute" (*id.* at 535 n 5). Given the limited scope of the Attorney General's adjudicatory authority under this section of the General Business Law, we concluded that the Legislature did not "intend[ ] to deprive the court of its

traditional equitable jurisdiction to consider claims of illegality on the part of the sponsor apart from noncompliance with that provision" (*id.*; *see also McGee v Lepow*, 82 AD2d 746, 747 [1st Dept 1981], *appeal dismissed* 54 NY2d 1027 [1981]).

In this case, defendants essentially ask us to construe the Superintendent's exclusive original jurisdiction to approve the Transformation under the relevant provisions of the Insurance Law to mean that he is also the exclusive arbiter of all private claims that may arise in connection with the Transformation—including claims that the restructuring rendered MBIA Insurance insolvent and was unfair to its policyholders. Defendants' contention, taken to its logical conclusion, would preempt plaintiffs' Debtor and Creditor Law and common-law claims. We reject this argument and conclude that there is no indication from the statutory language and structure of the Insurance Law or its legislative history that the Legislature intended to give the Superintendent such broad preemptive power (*see Matter of Zuckerman v Board of Educ. of City School Dist. of City of N.Y.*, 44 NY2d 336, 342-343 [1978] ["Although (the Public Employment Relations Board [PERB]) has exclusive jurisdiction of labor disputes between public employers and public employees involving the right to organize and the right to negotiate in good faith, this jurisdiction does not mean that any and all disputes between such parties fall exclusively to PERB. PERB's jurisdiction encompasses only those matters specifically covered by the Taylor Law"]).

If the Legislature actually intended the Superintendent to extinguish the historic rights of policyholders to attack fraudulent transactions under the Debtor and Creditor Law or the common law, we would expect to see evidence of such intent within the statute. Moreover, we would expect that, in such a situation, affected policyholders, such as plaintiffs, would have notice and an opportunity to be heard before the Superintendent made his determinations. Here, we find no such intent in the statute.[1] Nor do we see a provision that required the Superintendent to provide notice and an opportunity to be heard to plaintiffs before he approved the Transformation (*cf. Shah v*

---

1. We agree with the dissent that "intent may be implied from the nature of the subject matter being regulated" and that "[a] comprehensive and detailed statutory scheme may be evidence of the Legislature's intent to preempt" (dissenting op at 232, quoting *Matter of Cohen v Board of Appeals of Vil. of Saddle Rock*, 100 NY2d 395, 400 [2003] [emphasis omitted]). We disagree, however, that the Insurance Law implies such an intent here.

*Metropolitan Life Ins. Co.*, 2003 NY Slip Op 50591[U], *26 [Sup Ct, NY County 2003] [*affd in part by Fiala*, 6 AD3d at 321-322] [in the context of an Insurance Law article 73 demutualization, following the required statutory notice and an opportunity to be heard by the policyholders, "(t)he (L)egislature expressly placed the determination as to whether a plan of reorganization complied with the statute and was fair and equitable to policyholders in the (exclusive jurisdiction) of the Superintendent"]).

Defendants nonetheless look to Insurance Law § 326 (a) as a provision conferring exclusive authority on the Superintendent to adjudicate plaintiffs' private claims. Defendants' reliance on such provision, however, is entirely misplaced. That statute, as pertinent here states that "any order, regulation or decision of the [S]uperintendent is declared to be subject to judicial review in a proceeding under article [78] of the civil practice law and rules." A cursory reading of the plain language reveals that it does not vest the Superintendent with the power to consider causes of action such as plaintiffs'. Rather, the statute merely provides that the Superintendent's decisions—which derive from legislatively designated authority under the Insurance Law—are subject to review in an article 78 proceeding (*see Travelers Indem. Co. v State of New York*, 33 AD2d 127, 128 [3d Dept 1969], *affd* 28 NY2d 561 [1971] ["it is clear from the legislative history that (Insurance Law § 326) was written in its present form to insure that all and not just some of the determinations made by the (Superintendent) were reviewable by an article 78 proceeding"]). The Superintendent's determinations, however, have never included the adjudication of claims like those plaintiffs have put forward in this action. Nor can these claims be properly raised and adjudicated in an article 78 proceeding.

### III.

Because we perceive no basis to conclude that the Legislature divested Supreme Court of its general jurisdiction to adjudicate plaintiffs' Debtor and Creditor Law and common-law claims, explicitly through the Insurance Law or otherwise, we next turn to the preclusive effect, if any, of the Superintendent's approval of the Transformation on this plenary action. Such an inquiry requires an analysis of administrative collateral estoppel principles. At the outset, however, we observe that defendants correctly concede that collateral estoppel does not apply here.

While our inquiry would normally end with such a concession, a discussion is necessary here as the so-called "collateral attack doctrine" does not exist apart from the doctrines of exclusive original jurisdiction and administrative collateral estoppel principles. And there is good reason for this. The recognized doctrines, as they exist in New York, build in protections of notice and opportunity to be heard for affected constituencies.

The doctrine of collateral estoppel (or issue preclusion) is rooted in principles of fairness. It is well settled that the doctrine "may be invoked in a subsequent action or proceeding to prevent a party from relitigating an [identical] issue decided against that party in a prior adjudication" (*Staatsburg Water Co. v Staatsburg Fire Dist.*, 72 NY2d 147, 152 [1988]). In *Capital Tel. Co. v Pattersonville Tel. Co.* (56 NY2d 11 [1982]), we reaffirmed the principle that collateral estoppel applies to an administrative proceeding (*id.* at 17). In the context of administrative agency determinations, we have recognized that the doctrine of collateral estoppel "is applied more flexibly, and additional factors must be considered by the court" (*Allied Chem. v Niagara Mohawk Power Corp.*, 72 NY2d 271, 276 [1988]). "These additional requirements are often summed up in the beguilingly simple prerequisite that the administrative decision be 'quasi-judicial' in character" (*id.*, citing *Ryan v New York Tel. Co.*, 62 NY2d 494, 500 [1984]).

An administrative decision is quasi-judicial in character when it is " ' "rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law" ' " (*Matter of Jason B. v Novello*, 12 NY3d 107, 113 [2009], quoting *Ryan*, 62 NY2d at 499). Thus, for collateral estoppel to be triggered, not only must the identity of the issue decided in the prior action or proceeding have been the same, but also "there must have been a full and fair opportunity to contest the decision now said to be controlling" (*Gilberg v Barbieri*, 53 NY2d 285, 291 [1981], quoting *Schwartz v Public Adm'r of County of Bronx*, 24 NY2d 65, 71 [1969]; *see also Capital Tel. Co.*, 56 NY2d at 17).

■ Here, even assuming the issues considered by the Superintendent in approving the Transformation are identical to the issues raised by plaintiffs in their plenary action (which they are not), plaintiffs had no opportunity to contest the Superintendent's determination or, more importantly, challenge the validity of the financial information provided to him by defendants

which formed the basis of the Superintendent's approval. The record is indisputable on this point. MBIA Insurance submitted a private application to the Superintendent. The Superintendent did not conduct public hearings or provide public notice before rendering his determination. Crucially, the Superintendent accepted the truth of defendants' submissions (*cf. Shah*, 2003 NY Slip Op 50591[U] at *12-13, *affd in part by Fiala*, 6 AD3d at 321 [plenary lawsuit dismissed as a collateral attack on the Superintendent's decision to approve a demutualization of an insurance company where public hearings were held and plaintiff had notice and opportunity to be heard]). Simply put, there was nothing "quasi-judicial" about the Superintendent's approval process that ought to be binding on plaintiffs in this case (*see Staatsburg Water Co.*, 72 NY2d at 154 [even where party had an opportunity to participate in a prior proceeding, such proceeding is not quasi-judicial, and therefore not binding, where party's participation "did not necessarily amount to a full and fair opportunity to contest the determination"]).

That the Superintendent complied with lawful administrative procedure, in that the Insurance Law did not impose a requirement that he provide plaintiffs notice before issuing his determination, does not alter our analysis. To hold otherwise would infringe upon plaintiffs' constitutional right to due process. Indeed, as we stated in *Gilberg*, "[d]ue process, of course, would not permit a litigant to be bound by an adverse determination made in a prior proceeding to which he was not a party or in privity with a party" (53 NY2d at 291; *see also Phillips Petroleum Co. v Shutts*, 472 US 797, 811-812 [1985] [a party cannot be bound by a prior proceeding without "minimum procedural due process protection," including "notice plus an opportunity to be heard and participate in the litigation"]). Clearly plaintiffs here were not in privity with the Superintendent.

## IV.

Satisfied that the Superintendent's approval of the Transformation does not bar plaintiffs' independent plenary action, we address the sufficiency of the pleadings. Our standard of review is well familiar: "On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction" (*Leon v Martinez*, 84 NY2d 83, 87 [1994]; *see* CPLR 3026). Courts must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon*, 84 NY2d at 87-88).

■ We conclude that plaintiffs adequately pleaded causes of action under the Debtor and Creditor Law. Plaintiffs premise their first claim on Debtor and Creditor Law § 273, which requires them to allege that MBIA Insurance fraudulently made "conveyance[s]" that rendered it "insolvent" because it did not receive "fair consideration" for such conveyances. They base their second claim on Debtor and Creditor Law § 274, which similarly requires plaintiffs to allege that MBIA Insurance fraudulently made "conveyance[s] . . . without fair consideration," which left it with "unreasonably small capital." Debtor and Creditor Law § 276 forms the basis of plaintiffs' third cause of action. That statute requires plaintiffs to allege that defendants made conveyances and incurred obligations with the intent "to hinder, delay, or defraud either present or future creditors."

Plaintiffs, who are undoubtedly creditors of MBIA Insurance, support all of these claims by describing a series of allegedly fraudulent transactions made in bad faith by defendants after the Superintendent's approval of the Transformation, in which they ultimately assert defendants "stripped approximately $5 billion in cash and securities out of MBIA Insurance." Further, plaintiffs allege that MBIA Insurance received no consideration for the assets it transferred to MBIA Inc. As a result, plaintiffs allege that MBIA Insurance is insolvent and unable to meet its obligations under the terms of their policies. These allegations clearly support causes of action under sections 273 and 274 of the Debtor and Creditor Law. Moreover, these allegations, taken together and drawing all reasonable inferences in favor of plaintiffs, as we must at this stage of the litigation, sufficiently allege an intent on the part of defendants to defraud plaintiffs under section 276 (*see Dempster v Overview Equities*, 4 AD3d 495, 498 [2d Dept 2004]).

■ Turning to plaintiffs' common-law claims, we likewise conclude that plaintiffs pleaded a viable cause of action for breach of contract based upon a breach of the implied covenant of good faith. Of course, the implied covenant of good faith and fair dealing "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract" (*Dalton v Educational Testing Serv.*, 87 NY2d 384, 389 [1995] [internal quotation marks omitted]). Here, plaintiffs sufficiently allege that MBIA Insurance, by fraudulently transferring billions of dollars of its assets to MBIA Inc. for no consideration, "violated the covenant by substantially reducing the likelihood

that [it] will be able" to meet its obligations under the terms of the insurance policies (*ABN AMRO Bank, N.V.*, 81 AD3d at 254 [Abdus-Salaam, J., dissenting in part]; *see also MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 2009 NY Slip Op 31527[U], *19 [Sup Ct, NY County 2009] [MBIA Insurance itself successfully pleaded a breach of contract cause of action premised on breach of implied covenant by alleging that defendant "unfairly shifted the risks of default and delinquencies" to it]).[2]

We further conclude that the complaint adequately states a claim for abuse of the corporate form that may support a declaration piercing the corporate veil of MBIA Insurance. As the Appellate Division dissent appropriately observed,

> " '[t]he party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene' (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 142 [1993])" (81 AD3d at 255).

In that regard, plaintiffs' allegations that MBIA Inc. abused its control of its wholly-owned subsidiary, MBIA Insurance, by causing it to engage in harmful transactions that now shield billions of dollars in assets from plaintiffs and expose them to significant liability meet this test (*cf. East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc.*, 16 NY3d 775, 776 [2011] [piercing the corporate veil claim properly dismissed where plaintiff failed to allege any harm purportedly resulting from an abuse or perversion of the corporate form]).

Finally, we agree with the Appellate Division that plaintiffs' cause of action for unjust enrichment should be dismissed.

Accordingly, the order of the Appellate Division should be modified, without costs, in accordance with this opinion, and as so modified, affirmed.

READ, J. (dissenting). Plaintiffs seek relief in this plenary action brought pursuant to the Debtor and Creditor Law and common law that, if granted, would annul the decision made by

---

2. Contrary to the dissent, plaintiffs' assertions that the allegedly fraudulent transactions rendered MBIA Insurance insolvent and unable to meet payments under the terms of the policies, as pleaded in their complaint, can very well be considered "objectively measurable deviations from specific contract provisions" (dissenting op at 235).

the Superintendent of Insurance on February 17, 2009 to approve the restructuring of MBIA Insurance Corporation (MBIA Insurance) and related subsidiaries and affiliates by unwinding the underlying transactions. Whether or not this lawsuit is called, in the coinage of the First Department, a "collateral attack" on the Superintendent's approval (81 AD3d 237, 240 [2011]), the fact remains that the Legislature has confined any challenge to the propriety of the restructuring to a CPLR article 78 proceeding. This is so because the Insurance Law has preempted plaintiffs' statutory and common-law causes of action, which are all grounded in the notion that the restructuring sanctioned by the Superintendent caused MBIA Insurance to be insufficiently capitalized to the detriment of its structured-finance policyholders. Accordingly, I respectfully dissent.

## I.

New York law has historically vested the Superintendent with broad authority to regulate the insurance industry (see Insurance Law § 201 ["The superintendent shall possess the rights, powers, and duties, in connection with the business of insurance in this state, expressed or reasonably implied by this chapter or any other applicable law of this state"]). As particularly relevant to this lawsuit, he is responsible for making sure that insurance companies possess sufficient reserves to pay all their claims (see Insurance Law § 1303), even in the face of "excessive losses occurring during adverse economic cycles" (see id. § 6903 [a] [1]).

The regulatory regime in the Insurance Law embraces both advance approval of certain transactions that may affect an insurer's viability, and post-transaction supervision of the insurer's financial condition. Further, most significant transactions between insurers in a holding company system (as happened with the restructuring) require the Superintendent's prior approval that the terms of the transaction are "fair and equitable," and his consideration of whether the transaction may "adversely affect the interests of policyholders" (see id. § 1505 [a] [1]; [e]). Thus, the Superintendent reviews any proposed dividend distribution exceeding certain thresholds to make certain that paying it will leave the insurer with sufficient assets to satisfy all outstanding claims (see id. § 4105 [a]). Similarly, he reviews proposed stock redemption plans in advance to ensure that they are "reasonable and equitable" (see id. § 1411 [d]).

In addition to his prior approval of insurance transactions, the Superintendent also continually monitors domestic insurers' financial health through periodic examinations (see id. §§ 309-310) and reviews of insurers' annually filed financial statements and reports (see id. § 307). If as part of his review the Superintendent determines that an insurer lacks sufficient reserves—i.e., if it "is unable to pay its outstanding lawful obligations as they mature in the regular course of business" (see id. § 1309 [a])—the Superintendent has the exclusive authority to place the insurer into specialized liquidation or rehabilitation proceedings under article 74 of the Insurance Law (see id. § 7402 [a], [e]). Article 74 authorizes him to avoid "[a]ny transfer of . . . the property of an insurer . . . with the intent of giving to any creditor or enabling him to obtain a greater percentage of his debt than any other creditor of the same class" (see id. § 7425 [a]).

The Superintendent acted to carry out his responsibilities under the Insurance Law's comprehensive regulatory regime when he approved the dividend payment and stock redemption, and did not disapprove the reinsurance transaction, the individual components of the restructuring proposed by MBIA Insurance. Although the majority notes that the Superintendent "stressed a number of times that his approvals and non-disapproval[ ] were based on 'the representations made in the [a]pplication [by MBIA Insurance] and its supporting submissions, and in reliance on the truth of those representations and submissions' " (majority op at 219), he equally emphasized that his decisionmaking was informed by "the Department's examination of the MBIA Entities' financial condition prior to" the restructuring, and "the Department's analysis of the MBIA Entities' financial condition after the effectuation of" the restructuring. The approval, a complex 10-page document, also imposed various conditions on MBIA Insurance and/or its related affiliates and subsidiaries. In short, the Superintendent issued the approval only after a multi-month investigation of MBIA Insurance's finances, which encompassed the review of voluminous raw financial data and the running of "super-stressed or break-the-bank" tests by experts within the Department. He was not simply a passive recipient of information from MBIA Insurance, power-

less to verify that company's representations and dependent on its good graces, as the majority implies.[1]

> "The Legislature may expressly state its intent to preempt, *or that intent may be implied from the nature of the subject matter being regulated as well as the scope and purpose of the state legislative scheme . . . A comprehensive and detailed statutory scheme* may be evidence of the Legislature's intent to preempt" (*Matter of Cohen v Board of Appeals of Vil. of Saddle Rock,* 100 NY2d 395, 400 [2003] [emphases added] [state law governing review of area variances preempted contrary local law]).

As already noted, the Insurance Law vests broad powers in the Superintendent to regulate New York's insurance industry. More to the point, he is directed to ensure that precisely the kinds of transactions at issue in this case are carried out fairly and equitably, and leave the affected insurers with sufficient assets to satisfy their obligations to policyholders. The particular provisions of the "legislative scheme" relevant here, briefly described earlier, could hardly be more "comprehensive and detailed."

Concomitantly, the Superintendent considered the precise issues disputed by plaintiffs in this lawsuit when he approved the restructuring. In other words, plaintiffs' plenary action not only expressly seeks to undo the restructuring, but does so by contesting the findings underpinning the Superintendent's approval. There is essentially no daylight between the causes of action asserted by plaintiffs and the substance of the Superintendent's review.

For example, just as Debtor and Creditor Law § 274's prohibition on transfers that leave companies with "unreasonably small capital" is intended to keep companies sufficiently capitalized to "sustain operations" (*Moody v Security Pac. Bus. Credit, Inc.,* 971 F2d 1056, 1069, 1070 [3d Cir 1992]), so the Superintendent's supervision of reserves is intended to ensure that insurance companies can continue to operate by maintaining their ability to pay claims (*see* Insurance Law § 1309 [a]). Similarly, Debtor and Creditor Law § 276's prohibition on transfers that may "hinder [or] delay . . . either present or future" policyholders is essentially equivalent to

---

1. Of course, if plaintiffs believe that the Superintendent relied on inaccurate or unreliable data, they may pursue this tack in their CPLR article 78 proceeding.

the requirement that the Superintendent must determine that a transaction is "reasonable and equitable" (Insurance Law § 1411 [d]).

And in any event, the critical question is whether *"the thrust of [plaintiffs'] complaint"* goes to matters already determined by an expert agency that has been delegated the primary authority to resolve such issues (*Whitney Nat. Bank in Jefferson Parish v Bank of New Orleans & Trust Co.*, 379 US 411, 417 [1965] [emphasis added]). There need not be exact correspondence. And here, "the thrust" of plaintiffs' complaint is that the restructuring caused MBIA Insurance to be insufficiently capitalized to the detriment of its structured-finance policyholders. The Superintendent's approval of the restructuring was premised on his determination that this was not the case. Put another way, plaintiffs assert that the restructuring stripped MBIA Insurance of needed reserves whereas the Superintendent concluded that the restructuring left the insurer in sound financial condition, a prerequisite to his approval.[2]

The majority seems to suggest that if the Legislature "actually intended the Superintendent to extinguish the historic rights of policyholders to attack fraudulent transactions under the Debtor and Creditor Law or the common law, we would expect to see evidence of such intent within the statute"; and "we would expect that . . . affected policyholders . . . would have notice and an opportunity to be heard before the Superintendent made his determinations" (majority op at 224). As for the first proposition, we have, as already discussed, long held that preemption need not be express where the legislative regime is comprehensive and detailed. Most recently, for example, we held in *People v Grasso* (11 NY3d 64 [2008]) that the Not-For-Profit Corporation Law preempted certain common-law claims pressed by the Attorney General. There was no express language in the statute to this effect. And I am not

---

2. The majority compares this case to *Richards v Kaskel* (32 NY2d 524, 535 n 5 [1973]); however, in *Richards*, the administrative action—the Attorney General's acceptance of a sponsor's cooperative offering plan—"[did] not constitute approval" of the plan by him (*see* General Business Law § 352-e [4]; *Matter of Charles H. Greenthal & Co. v Lefkowitz*, 32 NY2d 457, 462 [1973] [noting that an offering plan is "filed simply for informational purposes" to enable prospective buyers to decide whether to purchase an interest]). Moreover, the plaintiffs in *Richards* alleged specific oral misrepresentations to tenants apart from the offering plan (*see Richards v Kaskel*, 69 Misc 2d 435, 443 [Sup Ct, NY County 1972]).

aware that we have ever considered the scope of an agency's notice and hearing provisions to be relevant to preemption.

## II.

In my view, plaintiffs' common-law causes of action are also preempted because they are simply artfully repackaged versions of the Debtor and Creditor Law claims. In any event, these causes of action are deficient on the merits, as the Appellate Division majority correctly concluded.

The majority reinstates plaintiffs' breach of contract claim, locating the breach within the implied covenant of good faith and fair dealing because "plaintiffs sufficiently allege that MBIA Insurance, by fraudulently transferring billions of dollars in assets to MBIA Inc. for no consideration, violated the covenant by substantially reducing the likelihood that [it] will be able to meet its obligations under the terms of the insurance policies" (majority op at 228-229 [internal quotation marks omitted]). For support, the majority cites *MBIA Ins. Corp. v Countrywide Home Loans, Inc.* (2009 NY Slip Op 31527[U] [Sup Ct, NY County 2009]).

Countrywide underwrote and sold residential mortgage-backed securities and obtained financial guarantee insurance on those securities from MBIA Insurance. To get MBIA Insurance to sign on, Countrywide represented that if there was "a breach of any representation or warranty related to a mortgage loan (a 'Defective Loan'), it would either cure the breach or repurchase or substitute eligible mortgage loans for the Defective Loan" (*id.* at *5). The ultimate insurance between Countrywide and MBIA Insurance, in contrast to this case, "incorporated the representations and warranties . . . and gave MBIA [Insurance] the right to rely on these representations and warranties, to enforce their terms, and to exercise remedies for any breach" (*id.* at *6).

Supreme Court rejected MBIA Insurance's generalized claims that the parties' insurance agreement included an implied promise that Countrywide would tell MBIA Insurance all about different special kinds of risk and use underwriting standards of a certain quality. But the court upheld one narrow aspect of MBIA Insurance's breach of contract claim:

> "the claim survives to the limited extent that it asserts that corrective action—such as investigating loans which became over 30-days delinquent—would

have preserved MBIA[ Insurance]'s benefits under the bargain, but that Countrywide Home deliberately refused to take such action in order to collect more late payment fees and service charges" (*id.* at *19).

In other words, Countrywide allegedly frustrated *specific objectives in the parties' contract.*

Here, by contrast, plaintiffs have not alleged any objectively measurable deviations from specific contract provisions. And it is undisputed that, as part of the restructuring, MBIA Illinois agreed to reinsure the $554 billion in outstanding municipal bonds issued by MBIA Insurance. As plaintiffs themselves explain, the "reinsurance gives policyholders direct claims against both the original insurer (MBIA Insurance) and the reinsurer (MBIA Illinois)." One can hardly say that MBIA Insurance derives no benefit whatsoever from the fact that one of its sister companies is now jointly liable for its entire municipal bond portfolio.

Plaintiffs also allege that the parent company abused MBIA Insurance's corporate form by shifting assets to cause insolvency and lack of present ability to meet its obligations to policyholders (although the company has, in fact, paid all claims that have become due since the restructuring). To pierce the corporate veil, plaintiff must show that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) . . . such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 141 [1993]). We have held that "[t]hose seeking to pierce a corporate veil . . . bear a heavy burden" (*TNS Holdings v MKI Sec. Corp.*, 92 NY2d 335, 339 [1998]).

In the majority's view, plaintiffs can apparently show domination of MBIA Insurance by virtue of its status as a wholly-owned subsidiary of MBIA Inc. (majority op at 229); however, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries" (*United States v Bestfoods*, 524 US 51, 61 [1998]). Further, the majority grounds the requisite abuse of the corporate form on the allegation that MBIA Inc. "caus[ed]" MBIA Insurance to undertake "transactions that now shield" assets from plaintiffs—in other words MBIA Inc. purportedly drained capital from its subsidiary (majority op at 229). As the Second Circuit Court of Appeals has pointed out, though, "no New York authority . . . disregards

corporate form solely because of inadequate capitalization" (*Gartner v Snyder*, 607 F2d 582, 588 [2d Cir 1979]).

### III.

The Superintendent approved MBIA Insurance's restructuring after finding that it was fair and equitable and would leave the affected insurers with sufficient assets to satisfy their obligations to policyholders, including, of course, these plaintiffs, who have persuaded the majority that the courts may nonetheless review the restructuring de novo. Having recently merged the Departments of Insurance and Banking to create a new Department of Financial Services to provide the "responsive, effective, innovative[ ] state banking and insurance regulation . . . necessary to operate in a global, evolving and competitive market place" (L 2011, ch 62, § 1, enacting Financial Services Law § 101-a), the Legislature may wish to consider if, as a result of today's decision, further legislation is now necessary to address the new Department's envisioned role as the arbiter of major financial transactions in these industries. Critically, it does not enhance New York's reputation as a major financial center for insurers to be put in a position where they survive our State's daunting regulatory gauntlet and gain approval for a financial transaction under the Insurance Law, yet remain vulnerable to multiple lawsuits brought in state and federal court[3] by disaffected policyholders who claim that the same transaction is fraudulent under other state statutes and common law. The regulatory agency would not be a party in these lawsuits and, after today's decision, there is no reason for such plaintiffs to bring a CPLR article 78 proceeding in addition to their plenary actions.[4] It surely behooves the Legislature to make clear that

---

**3.** MBIA Insurance has also been sued in the United States District Court for the Southern District of New York, and in the Delaware Court of Chancery (*see Aurelius Capital Master, Inc. v MBIA Ins. Corp.*, 695 F Supp 2d 68 [SD NY 2010] [suit by a putative class of structured-finance policyholders]; *Third Ave. Trust v MBIA Ins. Corp.*, 2009 WL 3465985, 2009 Del Ch LEXIS 186 [2009] [suit by noteholders]). The plaintiffs in these two cases press the same state statutory and common-law claims advanced by plaintiffs in this lawsuit. Multiple lawsuits in multiple jurisdictions present the obvious risk of conflicting or at least inconsistent outcomes for different policyholders of the same insurer, further undermining the certainty and stability of the Superintendent's approval.

**4.** Plaintiffs here did not commence their CPLR article 78 proceeding until shortly after MBIA Insurance filed its motion to dismiss. In the motion, MBIA

for which the majority discerns inadequate support in current law: the State's comprehensive financial regulatory regime preempts lawsuits under the Debtor and Creditor Law and common law seeking to upset transactions approved or directed by the Superintendent (now, the Superintendent of Financial Services), which may only be challenged in a CPLR article 78 proceeding.

Chief Judge LIPPMAN and Judges SMITH, PIGOTT and JONES concur with Judge CIPARICK; Judge READ dissents in a separate opinion in which Judge GRAFFEO concurs.

Order modified, etc.

---

Insurance argued that plaintiffs' action was barred as a collateral attack on the Superintendent's approval, which apparently alerted plaintiffs to the advisability of initiating a CPLR article 78 proceeding before the four-month statute of limitations expired. Other policyholders who have sued MBIA Insurance (*see* n 3 at 236) did not commence CPLR article 78 proceedings against the Superintendent.