■ Paul Emposimato, Jr., et al., Appellants-Respondents, v CIFC Acquisition Corp., et al., Respondents-Appellants. CIFC Acquisition Corp., Third-Party Plaintiff-Respondent-Appellant, v Concordia International Forwarding Corp., Third-Party Defendant-Appellant-Respondent. [932 NYS2d 33]—

The motion court correctly found that in order to invoke the right to terminate pursuant to section 8.1 (e) of the SPA, plaintiffs had to provide schedules to CIFC 30 days before the purported termination on June 6, 2008, that is, by May 7, 2008. Further, the schedules had to be final versions and in reasonable and customary form. Defendants established that the April 14, 2008 schedules were not "final" versions within the meaning of the SPA. Indeed, the e-mail cover letter, to which the schedules were attached, indicated that the schedules had not been seen by third-party defendant and were subject to further review. In addition, some of the schedules were missing required content and attachments and/or contained qualifying statements indicating that they could not be considered a final version. Moreover, given that plaintiffs sent CIFC at least two revised versions of the schedules after April 14, 2008, there was no basis upon which CIFC should have understood that the April 14 schedules were final versions. Accordingly, the motion court properly resolved the merits of the first cause of action, for a declaratory judgment against plaintiffs, and correctly issued a declaration in favor of defendants (*see Maurizzio v Lumbermens Mut. Cas. Co.*, 73 NY2d 951, 954 [1989]).

The motion court also correctly denied that branch of defendants' motion for summary judgment dismissing plaintiffs' second cause of action, for breach of the implied covenant of good faith and fair dealing. Contrary to defendants' contention, that cause of action was not limited to an allegation that they breached section 5.1 (b) and (c) of the SPA. Thus, the claim was not a substitute for a nonviable breach of contract claim (*compare Triton Partners v Prudential Sec.*, 301 AD2d 411, 411 [2003]).

Nor should the second cause of action have been dismissed as against JCP, since issues of fact exist as to whether JCP is the alter ego of CIFC. Indeed, there was evidence that, among other things, JCP formed CIFC for the purpose of acquiring third-party defendant and that CIFC had no assets and engaged in no business activities beyond signing the SPA. Moreover, claims involving alter ego liability are "fact-laden" and "not well suited for summary judgment resolution" (*First Bank of Ams. v Motor Car Funding*, 257 AD2d 287, 294 [1999]).

CIFC was not entitled to partial summary judgment as to liability on its counterclaim and third-party complaint, which seeks damages for plaintiffs' and third-party defendant's alleged wrongful repudiation of the SPA. CIFC failed to demonstrate that, but for the alleged wrongful repudiation, it would have been ready, willing and able to fulfill its obligations under the SPA (*see Ross Bicycles v Citibank*, 200 AD2d 379, 380 [1994]; *see also Musick v 330 Wythe Ave. Assoc., LLC*, 41 AD3d 675, 676 [2007]; *Inter-Power of N.Y. v Niagara Mohawk Power Corp.*, 259 AD2d 932, 934 [1999], *lv denied* 93 NY2d 812 [1999]). Indeed, CIFC conceded that it was not satisfied with the schedules as they existed at the time of the purported termination of the SPA.

Plaintiffs were not entitled to summary judgment dismissal of the counterclaim for breach of contract. Contrary to their contention, the SPA was not a preliminary agreement. Indeed, the SPA does not refer to the negotiation or execution of any subsequent agreement and it expressly provides that it is binding on the parties (*compare IDT Corp. v Tyco Group, S.A.R.L.*, 13 NY3d 209, 213 n 2 [2009]). Further, the contents of the schedules were not material, open terms of the SPA, which could only become operative or effective with CIFC's consent. Rather, the contents are part of plaintiffs' and third-party defendant's performance obligations under the agreed upon and negotiated SPA. As for the various other disputes that arose between the parties, the motion court correctly noted that, among other things, they were not material terms of the SPA.

The motion court also properly found it premature to determine on this record that, at the time of the purported breach, the fair market value of the stock to be sold was equal to the contract price. Although the contract price constitutes evidence as to the fair market value of the stock at the time of the purported breach and is entitled to significant weight (*see Plaza Hotel Assoc. v Wellington Assoc.*, 37 NY2d 273, 277 [1975]), there was a difference of opinion regarding third-party defendant's fair market value at the time of the purported breach.

The damages sought by CIFC are not consequential damages precluded by section 7.2 (c) of the SPA. Rather, CIFC seeks expectation damages, which is the general measure of damages in a breach of contract case under New York law (*J.R. Loftus, Inc. v White*, 85 NY2d 874, 877 [1995]). In the case of a breach of a contract to sell securities, expectation damages are calculated as "the difference between the agreed price of the shares and the fair market value at the time of the breach" (*Aroneck v Atkin*, 90 AD2d 966, 966 [1982], *lv denied* 59 NY2d 601 [1983]; *see also Simon v Electrospace Corp.*, 28 NY2d 136, 145 [1971]). This formulation awards expectation damages to the extent of putting plaintiff in the same economic position he would have occupied had the breaching party performed the contract (*Oscar Gruss & Son, Inc. v Hollander*, 337 F3d 186, 196 [2d Cir 2003]). Thus, by seeking the amount of the difference between the fair market value of the stock at the time of the alleged breach and the price for the stock agreed upon in the SPA, CIFC is not seeking consequential damages precluded by section 7.2 (c) of the SPA (*see Schonfeld v Hilliard*, 218 F3d 164, 175-176 [2d Cir 2000]).

Lastly, the motion court properly declined to dismiss the third-party claim for breach of contract. There was evidence that, among other things, third-party defendant did not provide copies of its insurance policies and did not act in good faith, as required by the SPA.

We have considered the parties' remaining contentions and find them unavailing. Concur—Andrias, J.P., Sweeny, Renwick, Freedman and Manzanet-Daniels, JJ. **[Prior Case History: 30 Misc 3d 1233(A), 2011 NY Slip Op 50343(U).]**