OPINION OF THE COURT
Marcy S. Friedman, J.
In this action alleging veil piercing and “de-facto merger” claims, defendants Latinvision Media, Inc. (LVM) and Carlos Vassallo move, post-answer, to dismiss all claims against them.[1] Plaintiffs Webmediabrands, Inc., Internet.com Venture Fund II, LLC and I-Venture Management, LLC cross-move for summary judgment under CPLR 3212 (a). A judgment was entered, on December 7, 2011, in plaintiffs’ favor against Latinvision, Inc. (LVI) for approximately $1.18 million. Plaintiffs now seek to enforce the judgment against LVM and Vassallo.
Background
The undisputed facts are as follows. LVI was formed in 1998 (Vassallo aff, June 30, 2012, ¶ 4), and was in the business of “connecting Latin American Businesses with businesses in the United States” (defendants’ mem in support at 2), and “bringing] international companies to Latin American audiences” through a digital platform hosted at the domain name Latinvision.com (defendants’ rule 19-a statement in opp ¶¶ 18-19). Vassallo is and was at all relevant times the principal shareholder, officer and director of LVI (answer ¶¶ 8-9). In December of 1999, plaintiffs purchased 681,818 shares of preferred stock issued by LVI for $750,000 (id. ¶ 16). Subsequent to this purchase, on September 11, 2001, LVI’s office space at the World Trade Center was destroyed (defendants’ rule 19-a statement in opp ¶ 2). Despite the destruction of its office space, LVI continued to be and is still listed as an “active” domestic business corporation by the New York State Department of State, Division of Corporations (plaintiffs’ rule 19-a statement ¶ 2). Furthermore, LVI’s domain name, Latinvision.com, which was created prior to September 2001, is now being used by LVM and Vassallo (defendants’ rule 19-a statement in opp ¶ 19).
Vassallo is also the sole shareholder, officer and director of LVM (id. ¶¶ 6, 8). LVM was formed in 2005 for the purpose of “organizing] conferences and events for the Hispanic and Latin American community in the United States and for marketers *931 seeking to enter the U.S. Hispanic market” (id. ¶¶ 3, 18). From 2005 to 2011, LVM failed to file federal tax returns and Delaware franchise tax reports (defendants’ reply mem at 4). As a result of these failures, LVM was declared “void” by the Delaware Secretary of State, and the New York Secretary of State revoked LVM’s legal authority to do business in New York State (aff of Mitchell Eisenberg [general counsel of plaintiff Webmediabrands, Inc.] [Eisenberg aff], exhibit F).
In 2010, plaintiffs demanded the redemption of their preferred stock (defendants’ answer ¶¶ 20-21). Defendants refused to redeem plaintiffs’ stock and, in December of 2011, plaintiffs sought and obtained a judgment against LVI for $1.18 million, which represents the $750,000 purchase price of the preferred stock plus interest (Eisenberg aff, exhibit A [judgment]). This judgment remains unsatisfied (Eisenberg aff ¶ 1).
Discussion
The standards for summary judgment are well settled. The movant must tender evidence, by proof in admissible form, to establish the cause of action “sufficiently to warrant the court as a matter of law in directing judgment” (CPLR 3212 [b]; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). “Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Once such proof has been offered, to defeat summary judgment “the opposing party must ‘show facts sufficient to require a trial of any issue of fact’ (CPLR 3212, subd [b])” (Zuckerman, 49 NY2d at 562).
Piercing the Corporate Veil
It is further settled that “[t]he concept of piercing the corporate veil is a limitation on the accepted principles that a corporation exists independently of its owners, as a separate legal entity, [and] that the owners are normally not liable for the debts of the corporation” (Matter of Morris v New York State Dept. of Taxation & Fin., 82 NY2d 135, 140 [1993]). In order to pierce the corporate veil, the movant “must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene” (id. at 142). The party seeking to pierce the corporate veil bears a “heavy burden” (see ABN AMRO Bank, N.V. v MBIA Inc., 17 NY3d 208, 235 [2011]). Under New York law, factors to be considered in determining whether the corporate veil can be *932 pierced “include whether there was a failure to adhere to corporate formalities, inadequate capitalization, commingling of assets, and use of corporate funds for personal use” (East Hampton Union Free School Dist. v Sandpebble Bldrs., Inc., 66 AD3d 122, 127 [2d Dept 2009] [internal quotation marks and citations omitted]). Additional factors include “overlap in ownership and directorship, or common use of office space and equipment” (Forum Ins. Co. v Texarkoma Transp. Co., 229 AD2d 341, 342 [1st Dept 1996]).
Plaintiffs contend that piercing the corporate veil against LVM and Vassallo is appropriate in this case because Vassallo “was the principal shareholder and officer of both LVI and LVM and he dominated their affairs” (complaint ¶ 8). Plaintiffs further contend that LVM was created for the abusive purpose of continuing the business of LVI while avoiding LVI’s financial obligation to plaintiffs (id. ¶ 12).
In support of their claims, plaintiffs submit evidence that defendants completely failed to respect the separate legal existence of LVM and LVI. In particular, plaintiffs present undisputed evidence that defendants commingled assets and that Vassallo appropriated corporate funds for his personal use. This evidence includes checks drawn on Vassallo’s personal bank account for payment of corporate expenses—e.g., checks payable to New York State corporation tax and New York City Department of Finance (Eisenberg aff, exhibit J); checks payable to “Latinvision” or “Latinvision Inc.” or Carlos Vassallo, and deposited into the LVM account (id., exhibit K); and cash withdrawals by Vassallo from the LVM account (id., exhibit L). These latter withdrawals by Vassallo from the LVM account were made on 45 occasions and totaled over $120,000 (id.).
Vassallo argues that these transactions are simply evidence that he frequently received “loans” or “shareholder distributions” from LVM to pay for various personal expenses, and that he only withdrew funds from the corporate account because he “lacked funds needed to maintain a [personal] bank account” (defendants’ reply mem at 4; Vassallo aff, Sept. 18, 2014, ¶ 14). In his deposition testimony, Vassallo also states that he used a corporate credit card to pay for his personal expenses, and again claims such transactions were “loans” between LVM and himself (Vassallo deposition at 66 [Eisenberg aff, exhibit M]).
The court rejects defendants’ post hoc characterizations of Vassallo’s extensive cash withdrawals and use of a corporate credit card for personal expenses as “loans” or “shareholder *933 distributions.” Vassallo admits that any such “loans” were “open ended” and that he, unilaterally, was “expecting to cancel those loans” (id. at 59). Furthermore, defendants fail to produce any evidence that these transactions were classified as “loans” at the time they were made, or were systematically recorded or approved in a proper fashion. Even if such transactions were “loans” or “shareholder distributions,” defendants submit no evidence that they retained sufficient earnings from corporate operations to meet financial obligations before distributing those earnings to Vassallo.
The evidence on this record of commingling of funds strongly supports plaintiffs’ veil piercing claim (see Pae v Chul Yoon, 41 AD3d 681, 682 [2d Dept 2007] [holding that piercing the corporate veil was an appropriate remedy where “(t)he evidence also revealed the absence of corporate formalities, such as the lack of a distinction between corporate funds and the defendant’s personal funds”]; Azte Inc. v Auto Collection, Inc., 36 Misc 3d 1238[A], 2012 NY Slip Op 51731[U], *13 [Sup Ct, Kings County 2012] [holding that the failure to create loan documents with respect to money deposited into a corporate account, and treatment of corporate accounts as “though they were (defendant’s) personal funds that he could remove at will,” were indicative of abuse of the corporate form]).
Plaintiffs also cite defendants’ failure to submit any documentary evidence showing the existence of corporate governance mechanisms. Indeed, Vassallo acknowledges in his deposition testimony that LVM “was basically me,” and that LVM did not hold board of directors meetings, formally waive the requirement to hold such meetings, or maintain a corporate minute book (Vassallo deposition at 61-63).[2] Defendants also acknowledge that LVM failed to file franchise tax returns and that its corporate status “lapsed” or was suspended (defendants’ reply mem at 4). Defendants characterize their wholesale failure to maintain LVM’s corporate status or otherwise to adhere to corporate formalities as a “string of coincidences” or acts reflective of “the challenges of operating a small business in a turbulent economy” (defendants’ reply mem at 3, 5). These assertions are plainly insufficient to excuse defendants’ failure to observe corporate formalities.
As a general rule, claims “involving alter ego liability are fact-laden and not well suited for summary judgment resolu *934 tion” (Emposimato v CIFC Acquisition Corp., 89 AD3d 418, 420 [1st Dept 2011] [internal quotation marks omitted]). Here, however, the undisputed facts establish that LVI and LVM had overlapping owners and directors;[3] LVI, LVM, and Vassallo commingled assets; Vassallo used corporate funds for personal purposes; LVM used LVI’s domain name; and LVM and Vassallo held no corporate meetings and kept no corporate records. Under these circumstances, the court holds as a matter of law that both Vassallo and LVM are liable as alter egos of LVI for the judgment against LVI (see Austin Powder Co. v McCullough, 216 AD2d 825, 826-827 [3d Dept 1995] [awarding summary judgment against corporation’s principal where principal was corporation’s sole officer, director and shareholder; corporation held no corporate meetings and kept no corporate records; and corporation’s bank account was used to pay principal’s personal expenses and expenses of second corporation also dominated and controlled by principal; further awarding summary judgment against second corporation based on evidence that principal operated the two corporations “as one entity” and commingled their assets]; Ventresca Realty Corp. v Houlihan, 41 AD3d 707, 709 [2d Dept 2007] [awarding summary judgment against corporation’s principals on the ground, among others, that the corporation held no regular meetings and maintained no records or minutes]).
In view of this disposition, the court does not reach plaintiffs’ claim alleging liability based on the de facto merger doctrine.
It is hereby ordered that the motion for summary judgment by plaintiffs Webmediabrands, Inc., Internet.com Venture Fund II, LLC, and I-Venture Management, LLC, on plaintiffs’ second cause of action to pierce the corporate veil and impose liability on defendants Carlos Vassallo and Latinvision Media, Inc., is granted to the extent of ordering and adjudging that the corporate veil is pierced as to Carlos Vassallo and Latinvision Media, Inc., and it is further ordered that Carlos Vassallo and Latinvision Media, Inc., are jointly and severally liable for the judgment entered by this court on December 7, 2011, against Latinvision, Inc.

. Defendants’ post-answer motion to dismiss will be treated as a motion for summary judgment (see Rich v Lefkovits, 56 NY2d 276, 278-279 [1982]).

. Nor do defendants offer evidence that LVI held board meetings or shareholder meetings after 2001 despite its continued existence.

. Vassallo was the principal shareholder, director, and officer of LVI and the sole shareholder, director, and officer of LVM.