Telefónica S.A. v Millicom Intl. Cellular S.A. (2025 NY Slip Op 03153)

Telef¢nica S.A. v Millicom Intl. Cellular S.A.

2025 NY Slip Op 03153

Decided on May 22, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: May 22, 2025

Before: Manzanet-Daniels, J.P., Webber, Moulton, Rodriguez, Rosado, JJ. 

Index No. 651838/20|Appeal No. 3258|Case No. 2024-02042|

[*1]TelefÓnica S.A., Plaintiff-Respondent,
v
Millicom International Cellular S.A., et al., Defendants-Appellants.

Sher Tremonte LLP, New York (Kimo S. Peluso of counsel), for appellants.
Latham & Watkins LLP, New York (Samir Deger-Sen of counsel), for respondent.

Order, Supreme Court, New York County (Andrew Borrok, J.), entered on or about February 14, 2024, which, to the extent appealed from as limited by the briefs, granted the motion of plaintiff TelefÓnica S.A. for summary judgment on its breach of contract cause of action, denied the motion of defendants Millicom International Cellular S.A. and Millicom Spain S.L. (together, Millicom) for summary judgment, and awarded prejudgment interest to TelefÓnica on the entire payment it would have received under the relevant contract until the time it was able to mitigate damages, unanimously modified, on the law, to vacate so much of the order as provided for prejudgment interest on the full contract price from the closing date until the date of the replacement transaction and remand the matter to Supreme Court for further proceedings on prejudgment interest in accordance with CPLR 5001, and otherwise affirmed, without costs.
In early 2019, Millicom reached an agreement with TelefÓnica to purchase TelefÓnica's mobile communications business in Costa Rica. In the share purchase agreement (the SPA) governing the transaction, Millicom agreed to purchase from TelefÓnica all the shares in its local operating company. The parties were required to close the transaction by May 1, 2010, unless, as relevant here, they failed to obtain the required "Closing Regulatory Approval[s]." One of the terms of the SPA required the parties to obtain the "Authorization" of the General Comptroller of Costa Rica — or, as it is known in Costa Rica, an autorizaciÓn — to substitute Millicom for TelefÓnica as the parent corporation on a particular telecommunications license. The Comptroller, however, informed the parties that it lacked authority to issue an autorizaciÓn, and that the parties were required instead to seek a refrendo, or an endorsement, on an addendum to the license between the parties and the Costa Rican government. Millicom and TelefÓnica worked to obtain the Comptroller's refrendo before the contractual end date of May 1, 2020, after which point each of the parties had a right to terminate the deal. By February 2020, the parties still had not obtained the Comptroller's refrendo, and it became clear that the transaction might not close by May 1. Millicom informed TelefÓnica that it would honor its agreement to close the transaction if the parties obtained the Comptroller's refrendo before May 1, but that it was not willing to extend the end date beyond May 1. The parties were unable to secure the refrendo before May 1, and Millicom therefore terminated the deal. TelefÓnica then filed this action, alleging that Millicom breached the parties' contract by failing to close the transaction.
TelefÓnica established its entitlement to summary judgment on its breach of contract cause of action, as the evidence showed that Millicom breached the unambiguous terms of the SPA by failing to close on the transaction (see Greenfield v Philles Recs., Inc., 98 NY2d 562[*2], 569 [2002]). Section 5.4(b) of the SPA provides the definition of a "Regulatory Approval" — that is, any approval by a listed regulator that was "required to consummate the transactions" contemplated by the SPA. The "Closing Regulatory Approval[s]," which are set forth in section 6.1 and Disclosure Schedule 6.1, constitute an explicit subset of "Regulatory Approval," and thus also fit under the same umbrella. With respect to the "Closing Regulatory Approvals," section 6.1 states that their "satisfaction or waiver, to the extent permitted by applicable Law" was a condition precedent to closing.
Disclosure Schedule 6.1 itemizes the various Closing Regulatory Approvals, which were essentially a list of the "Authorizations" to be obtained from the Comptroller and other Costa Rican regulatory entities, including the Authorization from the Comptroller for substituting Millicom for TelefÓnica as the parent company. Thus, reading section 5.4(b) and section 6.1 together with Disclosure Schedule 6.1, this "Authorization" was an express condition precedent to closing only to the extent it was legally "required to consummate the transactions," and "permitted by applicable Law." Because obtaining an autorizaciÓn from the Comptroller was not legally required or permitted in Costa Rica — indeed, issuing autorizaciÓns is not something the Comptroller does — it naturally follows that obtaining an Authorization was not an enforceable condition precedent to closing.
We reject Millicom's alternative argument that the word "Authorization" was "broad enough to encompass" ratifications such as endorsements (refrendos) by the Comptroller in Costa Rica. The parties purposefully drafted the SPA in English, and their use of the capitalized word "Authorization" plainly referred to the legal term of art for seeking a regulatory authorization in Costa Rica — that is, an autorizaciÓn. The conclusion that the parties intended for an Authorization to apply to an autorizaciÓn is further supported by the differences between an autorizaciÓn and a refrendo under Costa Rican law. The plain terms of the SPA support TelefÓnica's interpretation.
However, Supreme Court should not have awarded prejudgment interest on the full contract price from the closing date until the date of the replacement transaction. CPLR 5001 governs prejudgment interest in contract cases, providing that prejudgment interest "shall be recovered upon a sum awarded because of a breach of performance of a contract . . ." (CPLR 5001[a]). Expectation damages provide "the general measure of damages in a breach of contract case under New York law" (Emposimato v CIFC Acquisition Corp., 89 AD3d 418, 421 [1st Dept 2011]). In the case of a breach of a share purchase agreement, "expectation damages are calculated as the difference between the agreed price of the shares and the fair market value at the time of the breach" (id. [internal quotation marks omitted]). Accordingly, we remand to Supreme [*3]Court for further proceedings to determine the amount of damages, if any, during the relevant periods from the time of the breach to date for which prejudgment interest under CPLR 5001 should be available, including the period from the time of the breach until the replacement transaction (see North River Ins. Co. v Ace Am. Reins. Co., 361 F3d 134, 145 [2d Cir 2004]; see also Matter of Hoffman, 275 AD2d 372 [2d Dept 2000]).
We have considered the parties' remaining arguments and find them unavailing.
The Decision and Order of this Court entered herein on December 17, 2024 is hereby recalled and vacated (see M-0444-0445 decided simultaneously herewith).
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: May 22, 2025