[904 NE2d 818, 876 NYS2d 682]

In the Matter of JASON B., Respondent, v ANTONIA COELLO NO-
VELLO, as Commissioner of the New York State Department
of Health, et al., Appellants.

Argued January 13, 2009; decided February 19, 2009

**POINTS OF COUNSEL**

*Andrew M. Cuomo, Attorney General,* New York City (*Cecelia C. Chang, Barbara D. Underwood* and *Benjamin N. Gutman* of counsel), for appellants. Res judicata does not bar the Office of Mental Retardation and Developmental Disabilities from reevaluating and correcting a nonadjudicative determination to grant services. (*Good Health Dairy Prods. Corp. v Emery,* 275 NY 14; *Gramatan Home Invs. Corp. v Lopez,* 46 NY2d 481; *Matter of Evans v Monaghan,* 306 NY 312; *United States v Utah Constr. & Mining Co.,* 384 US 394; *Matter of Josey v Goord,* 9 NY3d 386; *Ryan v New York Tel. Co.,* 62 NY2d 494; *Matter of Venes v Community School Bd. of Dist. 26,* 43 NY2d 520; *Allied Chem. v Niagara Mohawk Power Corp.,* 72 NY2d 271; *Matter of Fury [Lubin],* 4 AD2d 732; *Drummond v Commissioner of Social Sec.,* 126 F3d 837.)

*Mental Hygiene Legal Service, Second Judicial Department,*

Mineola (*Felicia B. Rosen, Sidney Hirschfeld* and *Dennis B. Feld* of counsel), for respondent. I. The Appellate Division did not preclude the Office of Mental Retardation and Developmental Disabilities from correcting its prior service approval. (*Matter of Graham v New York State Police & Fire & Retirement Sys.,* 188 AD2d 826; *Matter of Davidson v New York State & Local Employees' Retirement Sys.,* 185 AD2d 513.) II. The Appellate Division properly held that the October 13, 2006 determination by the Commissioner of the New York State Department of Health was not supported by substantial evidence. (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176; *Matter of Williams v Barrios-Paoli,* 270 AD2d 127; *People v Santos,* 127 Misc 2d 63.)

### OPINION OF THE COURT

CIPARICK, J.

In this appeal, we are asked to determine whether the doctrine of res judicata precludes the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD) from reassessing an earlier decision that an applicant is eligible for benefits as a result of a developmental disability as defined by Mental Hygiene Law § 1.03 (22). We conclude that it does not.

The Medicaid Act, administered by the Secretary of the Department of Health and Human Services, is a cost-sharing arrangement under which the federal government reimburses a portion of the expenditures incurred by states that elect to provide medical assistance to individuals who lack the resources to cover the costs of their medical care. Medicaid eligibility usually depends upon a strict financial means test. Those who receive institutional care can ordinarily satisfy this test. The Act allows the Secretary to grant a Home and Community Based Services Waiver giving the states the option to provide home or community-based services to certain individuals who would otherwise require nursing home or other institutional care (*see* 42 USC § 1396a [a] [10] [A] [ii] [VI]; § 1396n [c]).

New York State, through OMRDD, is authorized to operate such programs, each designed to assist individuals who meet specific eligibility requirements. These programs provide home and community based services targeted to a limited number of individuals with developmental disabilities in order to assist them to be active and to participate in their communities. For an individual to be eligible for such waiver programs, 14 NYCRR

635-10.3 requires that the applicant must have a developmental disability and would be placed in an intermediate care facility for the developmentally disabled but for the provision of waiver services. These waiver services allow the Medicaid-eligible applicant to remain in the community by choosing to reside in an appropriate living arrangement instead of placement in a facility.

OMRDD, under the oversight of the New York State Department of Health (DOH), provides waiver services which can include in-home care, counseling, vocational training, rental subsidies, transportation and respite services for families and caretakers.[1] In order to qualify for OMRDD-funded services, an applicant must show the disability:

"(a) (1) is attributable to mental retardation, cerebral palsy, epilepsy, neurological impairment, familial dysautonomia or autism;

"(2) is attributable to any other condition of a person found to be closely related to mental retardation because such condition results in similar impairment of general intellectual functioning or adaptive behavior to that of mentally retarded persons or requires treatment and services similar to those required for such person; or

"(3) is attributable to dyslexia resulting from a disability described in subparagraph (1) or (2) of this paragraph;

"(b) originates before such person attains age twenty-two;

"(c) has continued or can be expected to continue indefinitely; and

"(d) constitutes a substantial handicap to such person's ability to function normally in society." (Mental Hygiene Law § 1.03 [22].)

OMRDD, through its 13 regional Developmental Disabilities Services Offices, establishes eligibility for these services on the basis of the applicant's developmental disability within the definition of Mental Hygiene Law § 1.03 (22). Generally, OMRDD

---

1. *See* Office of Mental Retardation and Developmental Disabilities, OMRDD Services, http://www.omr.state.ny.us/ws/servlets/WsNavigationServlet (last updated Aug. 20, 2008).

bases its eligibility determination upon the documentation provided by the applicant. At any point during the eligibility determination process, however, OMRDD may request more information or further assessment of an individual. These further assessments can be performed by the referral source, the individual's other current providers or by an independent qualified practitioner.[2] If an applicant is found not to meet the requirements of Mental Hygiene Law § 1.03 (22), the denial is automatically reviewed by designated clinicians and an independent OMRDD committee composed of licensed practitioners. Approvals, however, are made without an administrative hearing and once a regional office determines an individual is eligible, no further clinical or committee review is required.

In 2003, petitioner Jason B. applied for OMRDD support services through the Hudson Valley regional office. He was found eligible for services and began receiving from OMRDD a rent subsidy and an in-home aide through a private service provider, Taconic Innovations, Inc. The aide was to assist him with his daily living skills, such as laundry, cooking and shopping, and further provide Jason B. with transportation and money management training.

Over the next couple of years, as Taconic provided the support services to Jason B., it began to question whether he was developmentally disabled, citing his repeated behavioral problems, and requested that OMRDD reevaluate him. In 2006, after a break in service caused by Jason B.'s arrest and incarceration, Taconic again asked OMRDD to reconsider his eligibility for services. In 2006, the Hudson Valley regional office reassessed Jason B.'s medical records and its eligibility committee concluded that its initial grant of services in 2003 was in error. Subsequently, two independent OMRDD committees, composed of licensed physicians, psychologists and social workers, reviewed the same medical information that had been previously considered in 2003 and agreed with Hudson Valley's reassessment that Jason B. did not have a developmental disability as defined by Mental Hygiene Law § 1.03 (22).

In a decision dated June 15, 2006, DOH informed Jason B. that all support services would be terminated on July 1, 2006. The decision also provided details on how to appeal by doing

---

**2.** *See* OMRDD Advisory Guideline—Determining Eligibility for Services: Substantial Handicap and Developmental Disability, Aug. 10, 2001, section IV, at 15, available at http://www.omr.state.ny.us/wt/images/wt_advisory _guidelines.pdf.

both of the following: (1) asking for a meeting (conference) with the OMRDD, and (2) requesting a fair hearing with a state hearing officer from the New York State Department of Social Services. Further, in a letter from Hudson Valley dated June 22, 2006, Jason B. was notified that he could submit any additional documentation prior to the meeting. Jason B. did not, however, submit any additional documents, nor did he request further testing to confirm that he indeed had a developmental disability within the meaning of Mental Hygiene Law § 1.03 (22).

On October 4, 2006, a fair hearing was held. This was the first instance in which evidence was introduced, testimony was taken, arguments were presented, objections were made and a transcript of the fair hearing created. According to OMRDD's Chief Psychologist, Dr. Ann Troy, the reason Jason B. was mistakenly approved for services in 2003 was because the committee members were not familiar with two of his tests and misinterpreted the results. In a decision dated October 13, 2006, the Commissioner of the New York DOH confirmed OMRDD's determination that Jason B. was not developmentally disabled, and that his enrollment in the support waiver program should be terminated.[3]

Jason B. commenced the instant CPLR article 78 proceeding challenging the DOH Commissioner's determination that he is not developmentally disabled and therefore not eligible for services. After a transfer from the Supreme Court pursuant to CPLR 7804 (g), the Appellate Division granted Jason B.'s petition and annulled DOH's determination. The Appellate Division held that when OMRDD concluded, based on then-available medical evidence, that Jason B. was developmentally disabled and eligible to receive support services in 2003, such a conclusion was a quasi-judicial determination and therefore entitled to limited res judicata effect. The court further found that since the 2006 determination was not based on any new evidence or changed circumstances, it was not supported by substantial evidence (44 AD3d 761, 762 [2007]). We granted leave to appeal (10 NY3d 710 [2008]) and now reverse.

---

**3.** The record states that Jason B. has held jobs such as driving an ice cream truck, a security job, cook, stock boy and has worked at family dollar stores. Further, a witness appearing on behalf of Jason B. testified at the time of his fair hearing that he was currently employed as a bus monitor working with handicapped children. The record additionally indicates that Jason B. has a driver's license, has completed one semester of college and showed an interest in obtaining a degree in computer science.

■ The principles of administrative res judicata have been long settled. We have held that

> "[s]ecurity of person and property requires that determinations in the field of administrative law should be given as much finality as is reasonably possible . . . Indeed, it is the instinct of our jurisprudence to extend court principles to administrative or quasi-judicial hearings insofar as they may be adapted to such procedures" (*Matter of Evans v Monaghan*, 306 NY 312, 323-324 [1954]).

The doctrine of res judicata, however, is not applicable in the instant case as no administrative or quasi-judicial hearing took place in 2003. The record shows that the 2003 eligibility determination was not based upon a practice and procedure of an administrative tribunal that is comparable to that of a court of law. In *Matter of Josey v Goord* (9 NY3d 386 [2007]) we stated that "res judicata is generally applicable to quasi-judicial administrative determinations that are 'rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law' " (*id.* at 390, quoting *Ryan v New York Tel. Co.*, 62 NY2d 494, 499 [1984]).

In 2003, the procedures followed by the OMRDD which resulted in the administrative determination that Jason B. was eligible for support services were not the product of an adversarial proceeding where evidence was received, testimony taken, and arguments and objections made resulting in a record upon which OMRDD's decision can be based. "*Res judicata* is a doctrine associated with dispute-resolution rather than administrative determinations in general" (*Matter of Venes v Community School Bd. of Dist. 26*, 43 NY2d 520, 523 [1978]). Indeed, State Administrative Procedure Act § 102 (3) defines an adjudicatory proceeding as

> "any activity which is not a rule making proceeding or an employee disciplinary action before an agency . . . in which a determination of the legal rights, duties or privileges of named parties thereto is required by law to be made only on a record and after an opportunity for a hearing."

The record before us shows that in 2003 a regional office of OMRDD accepted medical documents submitted by petitioner

and reached an administrative determination that Jason B. met the criteria of Mental Hygiene Law § 1.03 (22). In approving Jason B. as eligible to receive certain support services, OMRDD did not hold, nor was it required to conduct, a hearing. Since the 2003 eligibility determination was not "quasi-judicial," which requires a trial-type hearing with opportunity for presentation of evidence and cross-examination, nor the product of an adversarial proceeding in which dispute resolution occurred, we find the Appellate Division erred in its application of the doctrine of res judicata.

To hold that res judicata applies to this nonadjudicative designation of eligibility, and thus preclude OMRDD from reviewing or reconsidering prior administrative action, would impermissibly estop it from enforcing its statutory mandate when it has erred in making an initial assessment (*see Matter of New York State Med. Transporters Assn. v Perales*, 77 NY2d 126 [1990]). We cannot sanction a rule that so severely limits an administrative agency's ability to review its prior administrative actions in cases such as this where a nonadjudicative determination was initially made.

■ As to the issue of substantial evidence, the role of a court reviewing an administrative determination is limited to ensuring that the determination arrived at following an adversarial hearing is supported by substantial evidence (*see Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222 [1974]; CPLR 7803 [4]). Here, we find that the Commissioner's 2006 determination terminating petitioner's benefits is supported by substantial evidence. In *300 Gramatan Ave. Assoc. v State Div. of Human Rights* (45 NY2d 176 [1978]), we stated that "substantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably—probatively and logically" (*id.* at 181). At the 2006 hearing, OMRDD called an expert witness who interpreted differently the same medical evidence submitted in 2003 regarding petitioner's alleged developmental disability. No new documentary evidence was presented and petitioner, although given an opportunity to refute OMRDD's proof and present evidence on his own behalf, failed to do so. We therefore conclude that the Commissioner's determination has a rational basis and is amply supported.

Accordingly, the judgment of the Appellate Division should be reversed, without costs, and the petition dismissed.

Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur; Chief Judge LIPPMAN taking no part.

Judgment reversed, etc.