Matter of Krooks v Delaney (2022 NY Slip Op 01366)





Matter of Krooks v Delaney


2022 NY Slip Op 01366


Decided on March 3, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 3, 2022

533164
[*1]In the Matter of Bernard A. Krooks et al., as Guardians of the Person and Property of Max Krooks, Petitioners,
v
Kerry A. Delaney, as Acting Commissioner of the Officeof People With Developmental Disabilities, et al., Respondents.

Calendar Date:January 4, 2022

Before:Egan Jr., J.P., Lynch, Pritzker and Reynolds Fitzgerald, JJ.

Littman Krooks LLP, White Plains (Stephanie L. Goldstein of counsel), for petitioners.
Letitia James, Attorney General, Albany (Victor Paladino of counsel), for respondents.



Reynolds Fitzgerald, J.
Combined proceeding pursuant to CPLR article 78 and an action for declaratory judgment (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Department of Health sustaining the termination by the Office for People with Developmental Disabilities of certain Medicaid benefits to Max Krooks.
Since 2005 Max Krooks, a developmentally disabled person, has received home and community-based services (hereinafter HCBS) waiver and Medicaid service coordination from the Office for People with Developmental Disabilities (hereinafter OPWDD). Following his graduation from high school in September 2017, Krooks moved into Triform Camphill Community (hereinafter Triform), a facility that specializes in transitioning individuals with developmental disabilities from high school to adulthood. Triform has been certified as an Integrated Residential Community (hereinafter IRC)[FN1] and a private school. As part of that certification process, Triform agreed to forgo operating reimbursement from OPWDD in exchange for its ability to continue charging tuition. Upon learning that Krooks had become a resident of Triform, OPWDD terminated his benefits.[FN2] In October 2017, petitioners, as Krooks' guardians, requested a fair hearing to review OPWDD's discontinuance of these benefits. Following the hearing, the Department of Health (hereinafter DOH) affirmed OPWDD's decision finding that he was ineligible for benefits because Triform had agreed to forgo any operating reimbursement from OPWDD and that Krooks' residence at Triform was not an appropriate living arrangement according to 14 NYCRR 686.16. Additionally, DOH found that the discontinuance of the Medicaid service coordination was proper as Triform performed said services.
In May 2018, petitioners commenced this combined CPLR article 78 proceeding and action for declaratory judgment seeking to annul DOH's determination. Petitioners also sought declaratory relief and class certification on behalf of all similarly situated individuals. Respondents answered and sought to transfer the matter to this Court. Supreme Court dismissed the matter against respondent Samuel D. Roberts, the Commissioner of the Office of Temporary Disability Assistance, and then transferred the matter to this Court (see CPLR 7804 [g]).
"Initially, although petitioner[s] styled some of [their] relief sought as declaratory relief, a review of the petition/ complaint reveals that [their] challenge is to the underlying determination by [DOH] that is properly the subject of a CPLR article 78 proceeding. Accordingly, petitioner[s] had an adequate remedy in the form of a CPLR article 78 proceeding and [are] not entitled to any declaratory relief" (Matter of Escalera v Roberts, 193 AD3d 1232, 1233-1234 [2021] [internal quotation marks and citations omitted]; see Matter of Shore Winds, LLC v Zucker, 179 AD3d 1208, 1211 [2020], lv denied 35 NY3d 914 [2020]).
Turning to the merits, petitioners [*2]contend that DOH's determination upholding OPWDD's termination of benefits based on Triform being an ineligible living arrangement is not supported by substantial evidence. Specifically, petitioners argue that Triform satisfies the definition of a supervised community residence,[FN3] and, as such, is an "appropriate living arrangement" (14 NYCRR 635-10.3 [b] [5]). "In reviewing a Medicaid eligibility determination rendered after a hearing, this Court must review the record, as a whole, to determine if the agency's decisions are supported by substantial evidence and are not affected by an error of law" (Matter of Krajewski v Zucker, 145 AD3d 1252, 1252-1253 [2016] [internal quotation marks and citations omitted]; see Matter of Collins v Zucker, 144 AD3d 1441, 1442 [2016]; Matter of Whittier Health Servs., Inc. v Pospesel, 133 AD3d 1176, 1177 [2015]). "If substantial evidence is present in the record, this Court cannot substitute its own judgment for that of the respondent[s], even if a contrary result is viable" (Matter of Shanahan v Justice Ctr. for the Protection of People with Special Needs, 198 AD3d 1157, 1158 [2021] [internal quotation marks and citations omitted]).
"The Medicaid Act, administered by the Secretary of the Department of Health and Human Services, is a cost-sharing arrangement under which the federal government reimburses a portion of the expenditures incurred by states that elect to provide medical assistance to individuals who lack the resources to cover the costs of their medical care. . . . The Act allows the Secretary to grant [an HCBS] [w]aiver giving the states the option to provide home or community-based services to certain individuals who would otherwise require nursing home or other institutional care. New York State, through [OPWDD], is authorized to operate such programs," which "provide [HCBS] targeted to a limited number of individuals with developmental disabilities in order to assist them to be active and to participate in their communities. . . . These waiver services allow the Medicaid-eligible applicant to remain in the community by choosing to reside in an appropriate living arrangement instead of placement in a facility" (Matter of Jason B. v Novello, 12 NY3d 107, 109-110 [2009] [emphasis added; citations omitted]).
As relevant here, to be approved for participation in the HCBS waiver, the application "shall document that the person: (1) has a diagnosis of developmental disability; (2) is eligible for ICF/IID [FN4] level of care . . .; (3) is an enrolled Medicaid recipient or is eligible for enrollment; (4) exercised freedom of choice between receipt of waiver services or placement in an ICF/IID; and (5) will reside in an appropriate living arrangement (i.e., his/her own home or that of relatives, a supervised or supportive community residence, a certified individualized residential alternative . . ., or in a certified family care home) at the time of enrollment" (14 NYCRR 635-10.3 [b]). The question before [*3]this Court is whether substantial evidence supports the determination that Triform is not an "appropriate living arrangement."
Petitioners contend that while Triform may actually be state certified as an IRC/private school, it substantively satisfies the criteria set forth in 14 NYCRR 686.99 for a community residence and should be treated as such for benefit purposes. To this end, at the fair hearing, petitioners offered the testimony of the Triform administrator as to the setting and programs offered at the campus. Petitioners also offered undisputed proof that some students receiving day habilitation services at Triform — students who attend the school but do not reside on its campus — continue to receive the HCBS waiver, which, in petitioners' estimation, is a violation of both the US and NY Constitutions. However, what petitioners could not offer, as it does not exist, is any evidence that Triform has ever been certified by DOH as a community residence, a designation that respondents contend is a term of art referring to a class of facilities licensed by OPWDD. Said certification distinction is not a matter of form over substance, as argued by petitioners, but rather an essential identifier in the regulatory scheme, confirming as it does that the holder of same has met and abides by certain standards set by DOH. Additionally, even if we were to accept petitioners' argument, we would find that — even absent any consideration of state certification — Triform is not a "community residence" as provided for in 14 NYCRR 619.2 (d) (1). A review of the record reveals that Triform is a 400-plus-acre self-contained campus. The employment undertaken by the residents — land-based work that includes farming, gardening, forestry and the like — is done on and within the confines of the campus community. Residents' interaction with the local community at large is limited to intermittent day excursions. Thus, respondents' determination that Triform is not a community residence is supported by substantial evidence.
IRCs/private schools — the certification that Triform does have — are not included in the list of appropriate living arrangements set forth in 14 NYCRR 635-10.3. "[W]here a statute creates provisos or exceptions as to certain matters the inclusion of such provisos or exceptions is generally considered to deny the existence of others not mentioned" (McKinney's Cons Laws of NY, Book 1, Statutes § 240 at 412-413; accord Kimmel v State of New York, 29 NY3d 386, 394 [2017]). Lastly, as a condition for Triform to receive certification to operate, it agreed that it would not collect operating rate reimbursement from OPWDD. This Court is not free to legislate; if petitioners wish to include IRCs and private schools in the category of appropriate living arrangements or to allow IRCs to collect operating rate reimbursement from OPWDD, the Legislature is best suited to implement and resolve these concerns (see Matter of Amorosi v South Colonie Ind[*4]. Cent. School Dist., 9 NY3d 367, 372 [2007]).
Petitioners also contend that Krooks meets the regulatory requirements for Medicaid service coordination and, therefore, the discontinuance of such was an error of law. This program was repealed in October 2020. However, to the extent that petitioners seek reimbursement for the time period from 2017 to the date of repeal, we decline to do so. Assuming, without deciding, that Krooks qualifies for the program, it is undisputed that Triform provides service coordination as part of its program.
Finally, as to petitioners' constitutional claim — namely, their assertion that the termination of Krooks' benefits violates equal protection — we are unpersuaded. Krooks — a resident at Triform — is not similarly situated to his fellow nonresidential attendees, as he must be to sustain his equal protection claim (see Bay Park Ctr. for Nursing & Rehabilitation, LLC v Shah, 111 AD3d 1227, 1229 [2013]). Petitioners' other contentions have been considered and found to be without merit. We therefore confirm DOH's determination.
Egan Jr., J.P., Lynch and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: An IRC is a program certified by OPWDD as a residential program. To be considered an IRC, certain criteria must be met, including utilizing a live-in staffing pattern, and full and active interactions between staff and clients with minimal disruptions in clients' lives (see 14 NYCRR 27.2 [e] [1]). "Developmentally disabled persons shall be integrated into most aspects of the program's operation" and "[t]he environment shall be one of shared activities and mutual interdependence among disabled persons, program staff and administrators" (14 NYCRR 27.2 [e] [2]).

Footnote 2: Krooks was notified of the withdrawal of the Medicaid service coordination by an October 1, 2017 notice, which gave "moved out of catchment" as the reason. He was given notice of the termination of his HCBS waiver benefits by an October 5, 2017 notice of decision, which explained the termination was a result of his residency at Triform.

Footnote 3: A community residence is "[a] facility providing housing, supplies and services for persons with developmental disabilities and who, in addition to these basic requirements, need supportive interpersonal relationships, supervision, and training assistance in the activities of daily living. Community residences are designed to . . . provide a setting where persons can acquire the skills necessary to live as independently as possible" (14 NYCRR 686.99 [l] [2]). One type of community residence is a supervised community residence, which is defined as "a facility with staff onsite or proximately available at all times when the persons are present" (14 NYCRR 686.99 [l] [2] [i]; see 14 NYCRR 619.2 [d] [1]).

Footnote 4: An ICF/IID refers to an "[i]ntermediate [c]are [f]acility for [i]ndividuals with [i]ntellectual [d]isabilities" and it "is a residential facility that provides comprehensive care, supervision, habilitation, and treatment for individuals with developmental disabilities" (14 NYCRR 619.2 [3]).