Matter of Hudson Health Extracts, LLC v Zucker (2022 NY Slip Op 04207)

Matter of Hudson Health Extracts, LLC v Zucker

2022 NY Slip Op 04207

Decided on June 30, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 30, 2022

533357
[*1]In the Matter of Hudson Health Extracts, LLC, Petitioner,
v
Howard A. Zucker, as Commissioner of Health, et al., Respondents.

Calendar Date:June 2, 2022

Before:Garry, P.J., Egan Jr., Lynch, Reynolds Fitzgerald and McShan, JJ.

Feuerstein Kulick LLP, New York City (David Feuerstein of counsel), for petitioner.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for respondents.

Lynch, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Health declining to register petitioner as a registered organization authorized to manufacture and dispense approved medical marihuana products.
In 2014, the Legislature passed the Compassionate Care Act regulating the "manufacture, sale and use of medical marihuana" in New York (Sponsor's Mem, Bill Jacket, L 2014, ch 90; see Public Health Law article 33, title V-A). The act authorized respondent Commissioner of Health (hereinafter the Commissioner) to register up to five entities as organizations licensed to manufacture and dispense approved medical marihuana products (see Public Health Law § 3365 [9]). After the initial registration of five organizations, additional organizations could be registered in the Commissioner's discretion (see Public Health Law § 3365 [9]).
The Legislature set forth an extensive list of statutory criteria to consider in determining whether to grant such a license (see Public Health Law § 3365 [1] [a]), including, among other things, whether the applicant (i) "w[ould] be able to maintain effective control against diversion of marihuana;" (ii) was "able to comply with all applicable state laws;" (iii) was "ready, willing and able to properly carry on the manufacturing or distributing activity for which a registration is sought;" (iv) "possesse[d] or ha[d] the right to use sufficient land, buildings and equipment to properly carry on the activity described in the application;" and, (v) whether "it [wa]s in the public interest that such registration be granted" (Public Health Law § 3365 [3] [a]; see 10 NYCRR 1004.6 [b]). If the Commissioner was satisfied that the applicant met the statutory criteria, he or she was required to grant such application (see Public Health Law § 3365 [3] [a]).
In April 2015, respondent Department of Health (hereinafter DOH) posted on its website a notice that it was accepting applications to register up to five organizations to manufacture and distribute medical marihuana under the act. Petitioner was 1 of 43 organizations that applied. An intricate review process was established by DOH, under which applicants were scored by independent reviewers for each of the 11 sections of the application. Some sections of the application were scored on a 0-3 scale, with 3 being the highest possible score. Portions of some sections were scored using a pass/fail system. The scores for each section were weighted to represent a certain percentage of the final score.
In July 2015, DOH released its selection of the first five registered organizations that had the highest five weighted scores.[FN1] Petitioner ranked 13th among the 43 applicants, resulting in the denial of its application. After being notified of such, petitioner requested a hearing (see Public Health Law § 3365 [3] [b]).[FN2] Following the hearing, an Administrative [*2]Law Judge (hereinafter ALJ) recommended that DOH's decision be sustained, finding that DOH's scoring methodology was rationally based and that the evidence supported DOH's determination to deny petitioner's application.[FN3] Petitioner filed exceptions and objections thereto, but the Commissioner ultimately adopted the ALJ's recommendation in full. Petitioner then commenced this CPLR article 78 proceeding seeking to annul the Commissioner's determination, which was transferred to this Court pursuant to CPLR 7804 (g).
Petitioner takes issue with the score it received for the financial standing portion of the application, arguing that it was in a superior financial position to that of other applicants that received the same score and that DOH failed to undertake the substantive financial review required by its own procedures. The crux of petitioner's challenge is to the methodology used by DOH to score the financial standing section of the application, not the underlying evidence obtained at the hearing pertaining to this section. Accordingly, petitioner's challenge implicates the arbitrary and capricious standard of review. Because the challenge, if successful, could terminate the proceeding, Supreme Court should have first disposed of the issue before transferring the proceeding to this Court pursuant to CPLR 7804 (g) (see generally Matter of Melendez v Board of Educ. of Yonkers City School Dist., 34 AD3d 814, 815 [2006]). Nevertheless, we will reach the merits in the interest of judicial economy (see CPLR 7804 [g]; Matter of Melendez v Board of Educ. of Yonkers City School Dist., 34 AD3d at 815).
We agree with petitioner that the scoring methodology used by DOH to assess the financial standing portion of petitioner's application was arbitrary and capricious. "An [agency's] action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Peckham v Calogero, 12 NY3d 424, 431 [2009] [citation omitted]; see Matter of Aponte v Olatoye, 30 NY3d 693, 698 [2018]). In accordance with its statutory authority (see Public Health Law § 3369-a), DOH promulgated regulations governing the procedure to be used in reviewing applications for registered organization status, which implicitly contemplate a review of an applicant's finances. To that end, DOH's regulations require it to consider whether an applicant can "produce sufficient quantities of approved medical marihuana products as necessary to meet the needs of certified patients" (10 NYCRR 1004.6 [b] [2]) and is "ready, willing and able to properly carry on the activities set forth in [the regulations]" (10 NYCRR 1004.6 [b] [5]) — considerations that necessarily require an accounting of the applicant's financial wherewithal. Applicants are also required to submit a "financial statement setting forth all elements and details of any business transactions connected with the application" (10 NYCRR 1004.5 [b] [10]) and "the most recent certified financial [*3]statement of the applicant, audited by an independent certified public accountant and prepared in accordance with generally accepted accounting principles . . ., including a balance sheet as of the end of the applicant's last fiscal year and income statements for the past two fiscal years, or such shorter period of time as the applicant has been in operation" (10 NYCRR 1004.5 [b] [16]).
In fashioning its scoring methodology for the different sections of the application, DOH made the financial standing section 9.6% of an applicant's overall score. The score for this section was delineated into three parts, the first two of which required submission of the financial disclosure forms contemplated by 10 NYCRR 1004.5 (b). These two parts were graded on a pass/fail basis, with applicants receiving a score of 2 — i.e., a passing score — upon submission of both required financial disclosure forms. The third portion of the score was an independent financial review and Nicole Quackenbush — director of the program — confirmed that this part "g[ot] its own score." The templates of the scoring sheet and the registered organization evaluation tool corroborate this testimony. Of the 43 applicants, 38 received a score of 2 (including petitioner and the 12 organizations that obtained overall higher scores) and five received a score of 0. No applicant received more than a 2 in this category.
In holding that DOH's scoring methodology for financial standing was rational, the ALJ reasoned that "the consideration criteria for the subject area was whether the applicant had attached two required financial statements, and the rating system provided in the scoring tool for these criteria was on a pass/fail basis. . . . Accordingly, the highest score given any applicant for this subject area was a raw score of 2 points when the application contained both financial statements." The ALJ further determined that petitioner did not establish "that the statute or regulations required [DOH] to rank an applicant higher if the applicant could demonstrate that it possessed superior financial resources." On this basis, the ALJ found that, despite the fact that petitioner's balance sheet indicated that it was in a superior financial position to that of many other applicants — amassing approximately $18.6 million in assets toward the endeavor — it did not establish "that it was entitled to a score of 3 points according to the scoring tool because [its] application only met the criteria for the item being evaluated."
Although the ALJ's reasoning in this respect is partially correct for parts 1 and 2 on the financial standing score sheet — as petitioner was entitled to a "pass" score for each such part since it submitted the required documents — no viable explanation was provided for how DOH assigned an overall score of 2 to the section. More importantly, the ALJ's analysis completely fails to account for part 3 and is contrary to Quackenbush's unrefuted testimony that this [*4]part was required to be independently scored. The ALJ's reasoning is also irrational given that the financial standing section was assigned a 9.6% rating criteria — the third highest score of any category.[FN4] To simply reason that an applicant gets a 2 for attaching the required financial statements, regardless of the information contained therein, ignores the need to substantively evaluate the applicant's actual financial standing — i.e., the capacity and wherewithal to implement the program in accordance with DOH's own regulations.
We reject respondents' argument that the ALJ's determination is rational insofar as the regulations do not expressly require a substantive financial review. Not only did DOH create a scoring methodology that directly contemplated such a review, but the regulations also implicitly do so by requiring DOH to consider whether the applicant is able to "produce sufficient quantities of approved medical marihuana products as necessary to meet the needs of certified patients" (10 NYCRR 1004.6 [b] [2]) and is "ready, willing and able" to perform (10 NYCRR 1004.6 [b] [5]). To the extent that DOH failed to undertake the required financial review, its determination regarding the financial standing portion of petitioner's application is arbitrary and capricious and must be annulled (see CPLR 7803 [3]; see generally Matter of Gilman v New York State Div. of Hous. & Community Renewal, 99 NY2d 144, 150 [2002]; Matter of Mid Is. Therapy Assoc., LLC v New York State Educ. Dept., 129 AD3d 1173, 1175-1176 [2015]).
That leaves the question of the appropriate remedy. Petitioner asks this Court to award it a score of 3 in the financial standing section, which, under DOH's rating description, is awarded when an applicant "me[ets] or excee[ds] the minimum criteria for the item being evaluated by clearly demonstrating a better than average level of performance." When applying the weighted conversion factor to this section, a score of 3 would yield four additional points to petitioner's overall score and, when coupled with the additional .56 points the ALJ properly determined petitioner was entitled to receive under the real property section, would place it in the top five applicants, entitling it to a license. Given the technical and specialized nature of the program at issue, and mindful of the agency's expertise in this area, we decline petitioner's request to undertake a substantive financial review in the first instance and, instead, remit the matter to DOH to do so. Following the review, DOH shall issue a new determination as to petitioner's financial standing score, as well as any related change to its overall score, and whether to grant petitioner a license.
To the extent that petitioner also challenges the scores it received in the product manufacturing, sales and dispensing, and miscellaneous sections of the application, we conclude that these scores are supported by substantial evidence (see generally Matter of Krooks v Delaney[*5], 203 AD3d 1292, 1296 [2022]; Matter of Mangels v Zucker, 168 AD3d 1060, 1061-1062 [2019]). Petitioner's remaining procedural arguments need not be addressed in light of our determination to remit the matter to DOH for a substantive review of the financial standing portion of the application.
Garry, P.J., Egan Jr., Reynolds Fitzgerald and McShan, JJ., concur.
ADJUDGED that the determination is modified, on the law, without costs, by annulling so much thereof as sustained the score petitioner received on the financial standing section of its application to be licensed as a registered organization authorized to manufacture and dispense approved medical marihuana products; matter remitted to respondent Commissioner of Health for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: In August 2017, DOH exercised its discretion to grant five more registrations (see Public Health Law § 3365 [9]), selecting the applicants in the original pool who had the next five highest scores.
Footnote 2: DOH permitted any unselected applicant to participate at the hearing, but the portion pertaining to petitioner's application was severed and heard separately.
Footnote 3: The ALJ increased petitioner's score in one section of the application pertaining to its real property infrastructure, but found that petitioner did "not establish[] that the increased score would place its application's rank above the
. . . organizations which have been currently registered."

Footnote 4: The fact that a substantive financial review may have been done within other sections of the application does not, as suggested by respondents, render the ALJ's determination rational. Indeed, this argument fails to account for the 9.6% rating criteria assigned to the financial standing category.