Matter of RSRNC, LLC v McDonald (2025 NY Slip Op 04131)

Matter of RSRNC, LLC v McDonald

2025 NY Slip Op 04131

Decided on July 10, 2025

Appellate Division, Third Department

Egan Jr., J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 10, 2025

CV-24-0024

[*1]In the Matter of RSRNC, LLC, Doing Business as Riverside Center for Rehabilitation and Nursing, Petitioner,
v
James . McDonald, as Commissioner of Health, Respondent.

Calendar Date:May 27, 2025

Before: Egan Jr., J.P., Aarons, Pritzker, Ceresia and Mackey, JJ.

O'Connell and Aronowitz, PC, Albany (Cornelius D. Murray of counsel), for petitioner.
Letitia James, Attorney General, Albany (Brian Lusignan of counsel), for respondent.

Egan Jr., J.P.
Combined proceeding pursuant to CPLR article 78 and action for declaratory judgment (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent finding that petitioner had violated certain regulations and imposing a penalty.
Nursing homes, like the facility operated by petitioner that is at issue here, are required by the Department of Health to "establish and maintain an infection control program designed to provide a safe, sanitary, and comfortable environment in which residents reside and to help prevent the development and transmission of disease and infection" (10 NYCRR 415.19). Further, in response to the emerging COVID-19 pandemic in March 2020, the Department issued specific guidance for the "prevention and infection control of COVID-19 at nursing homes" that took immediate effect and "supersede[d] any prior conflicting guidance" (Executive Order [A. Cuomo] No. 202.1 [9 NYCRR 8.202.1]). During the relevant period, that guidance required that those working in nursing home units with residents testing positive for COVID-19 not only "wear gown[s], gloves, eye protection . . . and facemasks," but also change "gloves and gowns" and perform hand hygiene when moving between residents.
Petitioner had a written infection control program in place on December 30, 2020, when several surveyors were at its facility to conduct a focused infection control survey on the Department's behalf (see Public Health Law § 2803 [1] [a]). One of the surveyors observed a housekeeping aide employed by petitioner violate infection control procedures by failing to remove his gown and gloves when he briefly left a unit with a number of COVID-19 positive residents to retrieve five rolls of toilet paper from a clean utility room. Respondent subsequently issued a statement of charges alleging that petitioner had failed to maintain an infection control program compliant with 10 NYCRR 415.19 and the Department's COVID-19 guidance in two respects; first, by failing to ensure that the aide remove his gown and gloves upon leaving the unit affected by COVID-19 (see 10 NYCRR 415.19 [a] [1]) and, second, by failing to ensure that door handles outside the unit were sterilized after they were touched by the aide in his soiled gloves (see 10 NYCRR 415.19 [b] [2]). Following a hearing, an Administrative Law Judge (hereinafter ALJ) found that the Department had established that both violations occurred and recommended that a civil penalty of $2,000 be assessed against petitioner for each. Respondent issued a determination in which he adopted the ALJ's report as his own and imposed the recommended penalties. Petitioner commenced this combined CPLR article 78 proceeding and action for declaratory judgment to challenge respondent's determination.[FN1] Supreme Court transferred the matter to this Court (see CPLR 7804 [g]).
To begin, although petitioner styled some of its claims as requests for declaratory relief, our review of the [*2]petition/complaint leaves no doubt that petitioner's "challenge is to the underlying determination by [respondent] that is properly the subject of a CPLR article 78 proceeding" (Matter of Krooks v Delaney, 203 AD3d 1292, 1294 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Lynch v NYS Justice Ctr. for the Protection of People with Special Needs, 190 AD3d 1063, 1064 [3d Dept 2021], lv denied 37 NY3d 903 [2021], cert denied ___ US ___, 142 S Ct 800 [2022]). Petitioner, in fact, does not attempt to argue otherwise in its brief or otherwise request remittal to address its alleged declaratory judgment claim. As a result, "Supreme Court appropriately transferred the entire matter to this Court" pursuant to CPLR 7804 (g) (Matter of Lynch v NYS Justice Ctr. for the Protection of People with Special Needs, 190 AD3d at 1064 n).
Turning to the merits, we confirm. The Department adopted 10 NYCRR 415.19 under the "broad authority" granted to it by the Legislature "to consider and implement regulations regarding the preservation and improvement of public health, as well as establishing standards in health care facilities that serve to foster the prevention and treatment of human disease" (Matter of Spence v Shah, 136 AD3d 1242, 1245 [3d Dept 2016], lv denied 27 NY3d 908 [2016]). The regulation requires nursing homes, in relevant part, to "establish an infection control program with written policies and procedures under which it . . . investigates, controls and takes action to prevent infections in the facility" (10 NYCRR 415.19 [a] [1]) and "assure[s] that all equipment and supplies are cleaned and properly sterilized where necessary" (10 NYCRR 415.19 [b] [2]). Petitioner suggests that respondent misinterpreted the regulation in finding that it had violated those provisions, arguing that it had a written infection control program as required at the time of the violations and could not be held liable for any isolated violation of those procedures by an employee. In assessing those claims, we note that "the interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable" (Matter of Gaines v New York State Div. of Hous. & Community Renewal, 90 NY2d 545, 548-549 [1997]).
The preamble to 10 NYCRR 415.19 states that "[t]he facility shall establish and maintain an infection control program designed to provide a safe, sanitary, and comfortable environment in which residents reside and to help prevent the development and transmission of disease and infection" (emphasis added). The fact that a nursing home operator must "maintain" the infection control program it establishes — a word commonly defined as "to keep in an existing state [and] preserve from failure or decline" (Merriam-Webster Online Dictionary, maintain [http://www.merriam-webster.com/dictionary/maintain]) — necessarily suggests an ongoing obligation [*3]on the part of the operator to ensure that its employees comply with the program's requirements. This suggestion is reinforced by the requirement that the infection control program include provisions dictating how the nursing home operator may "investigate[ ], control[ ] and take[ ] action to prevent infections," provisions that would be pointless if the operator had no ongoing obligation to enforce the program's provisions (10 NYCRR 415.19 [a] [1]). Indeed, the ALJ correctly recognized that there would be no obvious reason for 10 NYCRR 415.19 to exist without such an ongoing obligation because a nursing home and its employees would otherwise be free to ignore an infection control program once it was developed, and a regulation "will not be construed as to render [it] ineffective" (McKinney's Cons Laws of NY, Book 1, Statutes § 144). In our view, the foregoing reflects that respondent reasonably interpreted 10 NYCRR 415.19 as requiring petitioner to comply with and enforce the terms of its infection control program once established.
We are also satisfied that, although 10 NYCRR 415.19 imposes requirements upon "[t]he facility [to] establish and maintain an infection control program," petitioner could be penalized where one of its employees violated the terms of that program. Respondent is empowered to impose a civil penalty upon "any person who violates, disobeys or disregards any term or provision of [the Public Health Law] or of any lawful notice, order or regulation pursuant thereto for which a civil penalty is not otherwise expressly prescribed by law" (Public Health Law § 12 [1]). Civil penalties that "go to the governing body rather than a private litigant," like those available under Public Health Law § 12 (1), "are penal in nature" (Matter of Elm Realty v Office of Rent Control, 54 NY2d 650, 652 [1981]; see Town of Nassau v Nalley, 227 AD3d 1138, 1142 [3d Dept 2024]; Matter of Martindale v Novello, 14 AD3d 761, 763 [3d Dept 2004]). We accordingly look to when penal sanctions may be imposed against limited liability companies like petitioner and similar legal fictions, a context where, because such an entity "can operate only through [its] designated agents and employees, the acts of the latter are, in a sense, the acts of [petitioner] as well" (People v Byrne, 77 NY2d 460, 465 [1991] [internal citation omitted]; accord People v Highgate LTC Mgt., LLC, 69 AD3d 185, 188 [3d Dept 2009]). It follows that petitioner, like corporations and similar entities, may be penalized "for the intentional acts of its agents that are either (1) in violation of positive prohibitions or commands of statutes regarding corporate acts, (2) authorized through action of its officers or which are done with the acquiescence of its officers, or (3) performed on behalf of the corporation if undertaken within the scope of the agents' authority, real or apparent" (People v Highgate LTC Mgt., LLC, 69 AD3d at 188 [internal quotation marks, brackets and citations omitted]). [*4]As it is alleged here that a regulation governing petitioner's conduct was intentionally violated by one of its employees in the course of his work, petitioner may be penalized for that conduct, if proven.
Turning to the proof itself, respondent is the officer authorized to render a final determination following an evidentiary hearing, and his "assessment of the credibility of witnesses and the inferences to be drawn from the evidence presented are conclusive if supported by substantial evidence" (Matter of Rakstis v Axelrod, 126 AD2d 901, 902 [3d Dept 1987]; see Public Health Law § 12-a). At the hearing here, a copy of petitioner's infection control policy was placed into evidence. The hearing also included testimony from one of the surveyors who was at petitioner's facility on December 30, 2020 and described seeing one of petitioner's housekeeping aides walk out of the facility's COVID-19 positive unit wearing his gown, mask and gloves. The aide walked into a common area and kitchen, entered a clean utility room to retrieve toilet paper, and then returned to the COVID-19 positive unit with the toilet paper. At no point did the aide remove his gown or gloves or wash his hands as required by the infection control policy and 10 NYCRR 415.19 (a) (1). The testimony of that surveyor, as well as other testimony and documentary evidence, further reflected that the aide could have contaminated various surfaces outside of the COVID-19 positive unit because he failed to remove his gloves and wash his hands and there were no efforts to sterilize those surfaces as required by the infection control policy and 10 NYCRR 415.19 (b) (2). The aide, to his credit, came clean to the surveyor and admitted that he had violated petitioner's infection control policy, telling her that he knew what he had to do under the policy and did not do it because he was "rushed."
Petitioner had no deficiencies in the five infection control surveys conducted in the months leading up to the December 2020 survey, counsel for the Department conceded at the hearing that it "had a great infection control program for many months," and the surveyor who witnessed the violation acknowledged that petitioner had developed an appropriate infection control plan and properly trained employees about their obligations under it. Respondent was nevertheless free to credit the proof that the aide violated that policy on one occasion in December 2020 and, notwithstanding petitioner's efforts to argue otherwise, we are satisfied that such constitutes substantial evidence in the record for the determination that petitioner's employee "violate[d], disobey[ed] or disregard[ed]" multiple provisions of 10 NYCRR 415.19 and the infection control program in the course of his work and that such rendered petitioner liable (Public Health Law § 12).
To the extent that they are not addressed above, petitioner's contentions have been examined and found to be unavailing.
Aarons, Pritzker, Ceresia and Mackey, JJ., [*5]concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: Petitioner does not challenge the amount of the penalty imposed.